In re **GENERAL PLASTICS CORPORATION,**
Debtor.

**CAPITAL FACTORS, INC.,** Plaintiff,

v.

**GENERAL PLASTICS CORPORATION,**
Defendant.

**Bankruptcy No. 91–12375–BKC–AJC.**
**Adv. No. 91–0579–BKC–AJC–A.**

United States Bankruptcy Court,
S.D. Florida.

March 15, 1994.

Michael W. Ullman, Ullman & Ullman, North Miami Beach, FL, for plaintiff.

D. Jean Ryan, Paul D. Friedman, Friedman Rodruguez & Ferraro, Miami, FL, for defendant.

### *MEMORANDUM OPINION ON AMENDED MOTION OF CAPITAL FACTORS FOR FEES AND EXPENSES ON COUNTERCLAIM COUNTS II, III, V, AND VI*

JACK B. SCHMETTERER, Bankruptcy Judge, Sitting by Assignment and Designation.

### *INTRODUCTION*

Following bifurcated trial on liability before the Court, Findings of Fact and Conclusions of Law ("Findings and Conclusions") were made and entered. 158 B.R. 258 (1993). At the same time, orders were entered determining that the Plaintiff–Counterdefendant Capital Factors, Inc. ("Capital Factors") was not liable to Defendant–Counterplaintiff General Plastics Corporation ("General Plastics") on Counts II, III, V, and VI of the General Plastics' Counterclaim. It was further ordered that final judgment will be entered in favor of Capital Factors on these counts, dismissing them when the case is completed.

The remaining damage issues were set for trial, but the parties entered into a settlement stipulation ("Stipulation") approved No-

vember 1, 1993. Pursuant thereto, it became unnecessary to try the damage issues. However, there remained for ruling the instant motion (since amended) filed by Capital Factors seeking sanctions in the form of attorneys' fees and expenses on Counts II, III, V, and VI, pursuant to Fed.R.Bankr.P. 9011 and § 772.11 of the Florida Statutes.[1] Following consideration of filings by the parties, for reasons stated below, the motion for sanctions is allowed as to Counts V and VI and denied as to Counts II and III.

## A.  *Count II*

█ Count II was based upon General Plastics' theory that a "course of conduct", consisting of advances by Capital Factors made at the rate of 85% over a period of time, modified the Factoring Agreement and required Capital Factors to continue making such advances at the same rate. This position was proved untenable because the Factoring Agreement gave Capital Factors absolute discretion to reduce the advance rate at any time, and the evidence did not demonstrate a course of conduct amounting to an agreement to modify the contract.

Capital Factors cited authorities demonstrating that a prior practice of making advances did not, under agreements with similar clauses, restrict the lender's right to reduce or terminate such advances. *See* Capital Factors' Proposed Findings of Fact, pp. 41–49. The Court followed such cases in its Memorandum Opinion. *In re General Plastics,* 158 B.R. 258, 284 (Bankr.S.D.Fla.1993) at ¶ 3 of the Conclusions of Law ("Conclusions"). However, it was also recognized (¶ 4) that the "terms of a contract may be modified by the subsequent dealings of a party." (*Citing Pan American Engineering Co. v. Poncho's Constr. Co.,* 387 So.2d 1052 (Fla. 5th Dist.Ct.App.1980)). *See also Barile Excavating & Pipeline Co. v. Vacuum Under–Drain, Inc.,* 362 So.2d 117, 119 (Fla. 1st Dist.Ct.App.1978); *Curtis v. Radio Representatives, Inc.,* 696 F.Supp. 729, 733 (D.D.C. 1988); *Ford Motor Credit Co. v. Waters,* 273 So.2d 96, 100 (Fla. 3 Dist.Ct.App.1973).

During the period that Capital Factors retained confidence in General Plastics, it did indeed make advances to it at a rate of 85%. When that confidence fell, Capital Factors unilaterally reduced that rate to 75%. General Plastics did not meet its burden to show that the contract was amended by a course of conduct, but it cannot be said that it offered no evidence or legal authority related to that theory.

Count II was also based upon Capital Factors' asserted termination of the agreement without notice. The Factoring Agreement did clearly provide that Capital Factors could terminate upon breach of the agreement by General Plastics. General Plastics not only intentionally breached the Agreement, but committed a fraud upon Capital Factors by prebilling invoices. General Plastics, of course, knew of this intentional breach prior to filing the counterclaim since William Finn, a managing agent of General Plastics, directly participated in the scheme. *In re General Plastics Corp.,* 158 B.R. at 278. General Plastics claimed that Capital Factors gave no formal written notice of termination even if such cause was asserted. The Court found that claim without merit. Capital Factors' March 22, 1991, letter gave written notice of the termination of advances. *Id.* at 279.

However, there was at least room for argument, albeit weak, that written notice was required and that the notice given was not technically sufficient under the agreement.

Capital Factors quotes the Court's opinion, stating that "there was *no evidence in this case to prove* that the parties' course of conduct modified the provision allowing Capital Factors to reduce the advance rate...." *Id.* at 284. (Emphasis added.) Capital Factors argues that this equates to a finding that there was no proof offered whatsoever. Given the proofs offered at trial, the Court in effect found that General Plastics failed to meet its burden of proof, not that it submitted "no evidence" whatsoever. Pursuant to standards recited below, sanctions for Count II are not appropriate.

---

1.  The motion also mentions Fed.R.Civ.P. 11 as a basis, but movant did not contend in briefs that it applied here, nor does it apply. Fed.R.Bankr.P.

9011 is made applicable by its terms to sanctions in bankruptcy adversary proceedings, whereas Fed.R.Civ.P. 11 is not.

## B. *Count III*

■ Capital Factors next argues that sanctions should be imposed against General Plastics because it "failed to establish two essential elements of its claim [for tortious interference]—that the interference be both direct and intentional." General Plastics points to two Findings of Fact ("Findings") to show that it had something significant to offer at trial on these issues:

28. Capital Factors did send a letter to General Plastics' customers on March 26, 1991, reminding them to continue sending remittances to Capital Factors. General Plastics Ex. 3. However, this letter did not relate in any way to the buyer-seller relationship between General Plastics and its customers. It merely related to remittances, and Capital Factors had a right to continue receiving remittances at that time because there were outstanding advances still due.

29. General Plastics argues that Capital Factors had the necessary intent because it knew that terminating advances would cause General Plastics to shut down. It cites *McCurdy v. Collis*, 508 So.2d 380, 383, n. 2 (Fla.Dist.Ct.App.1987), which cites to *Florida Standard Jury Instruction (Civil)*, MI 7.2, for a definition of intentional interference that includes "[knowledge] that the interference is substantially certain to occur as a result of [defendant's] action." General Plastics did not establish at trial that Capital Factors could know with certainty that a termination of advances was "substantially certain" to result in a shut down of General Plastics' plant. While this was likely, it was by no means certain. In March of 1991, General Plastics could have looked to either its shareholder or its solvent affiliate in Dallas, Texas for fresh capital. The fact that they hadn't contributed anything up to that point did not mean that they could not or would not step into the breach after Capital Factors terminated advances. Moreover, it was certainly possible that a new lender would be found to loan against the historically strong receivables. Therefore, even under a more relaxed definition of intent, General Plastics' claim still fails.

At trial, therefore, General Plastics demonstrated that Capital Factors communicated with General Plastics' customers after terminating the Agreement. For reasons given at length in the Findings and Conclusions, this communication did not serve to interfere with General Plastics' relationship with its customers, and proof of the tort of interference was not sufficient. However, General Plastics proved the communication and proved that it was direct and intentional, albeit not tortious or wrongful. Sanctions are therefore not warranted under standards recited below.

## C. *Counts V and VI (Rule 9011)*

Counts V and VI were the theft and conversion counts.

■ Capital Factors contends that it is entitled to Rule 9011 sanctions because "General Plastics presented no evidence to prove that it had an immediate right to possession of the receivables … or that Capital Factors held a specifically identifiable sum of money …", proof that was required in these counts. The Court's Findings and Conclusions controvert Capital Factors' overstated contention that General Plastics failed to present any relevant evidence at all. The Court there concluded that "General Plastics had no immediate right to the receivables …", *In re General Plastics Corp.*, 158 B.R. at 287, and that General Plastics had "not established that proceeds from assigned receivables were specifically identifiable property capable of being converted." *Id.* at 288. However, General Plastics presented evidence as to its claim, though insufficient to prevail.

General Plastics did present evidence addressed to some elements of its claim for conversion (including the lack of competing claims to the receivables/monies), including the following:

Capital Factors factored more than $275,000.00 of receivables assigned after March 19, 1991 (the date the Court's finding determined that Capital Factors terminated the agreement (p. 40, par. 89)). TT (MacMillan) May 18, p. 189; TT (Finn) May 19, pp. 237–38; GP 223;

General Plastics' account balance with Capital Factors had been paid in full by no

later than April 9, 1991. TT (Herzog) May 18, p. 374; GP 223, Stip. (GP 327 no. 57);

Capital Factors admitted that it held property belonging to General Plastics between April 9, 1991 and the commencement of the bankruptcy proceedings solely because of the demands of the IRS and First Union. (Stip. (GP 327, nos. 32, 79, 80, and 84));

By and no later than April 9, 1991 and pursuant to the terms of the Agreement, Capital Factors was obliged to remit the monies and accounts it held to General Plastics and was also obligated to release its claim to any security interest in General Plastics' property (namely, its monies, accounts, inventory and equipment). (Kiefer Dep. (GP 330, pp. 30 and 31));

Not until July 25, 1991 did Capital Factors provide General Plastics a check in the amount of $423,908.34, monies collected since the termination of the agreement. (GP 175);

Not until November 20, 1992 did Capital Factors turn over to General Plastics $4,642.77 collected from General Plastics' customers. (GP 184);

The Agreement did not give Capital Bank a security interest in General Plastics' Receivables;

IRS notices of levy are not "continuing" or open-ended in nature, but rather affect only any monies held by the recipient of a levy on the date of the levy. (GP 130); and

Prior to commencing the interpleader litigation, no demand had been made by First Union upon Capital Factors for property (e.g., monies or accounts) belonging to General Plastics and held by Capital Factors. (TT (Astigarraga) May 19, p. 108).

Thus, Capital Factors' assertion that General Plastics failed to put on any proof at all in support of Counts V and VI is not correct.

But General Plastics relies overmuch on the foregoing evidence. It argued such evidence to the effect that Capital Factors failed to make purchase price payments after termination of the Factoring Agreement, and that claims and demands of the IRS, Capital Bank, and First Union were not valid at that time. This was asserted to justify the position that General Plastics had a "present or immediate right to possession" of the property as required for conversion and theft actions. Response, pp. 12–13.

However, General Plastics' managing agents testified at trial that they had acknowledged validity of the IRS lien at the time and had then acquiesced in the retention of proceeds by Capital Factors to pay off the lien. TT, Vol. 8, 310:22–312:1; 313:14–314:10; 353:18–354:3 (Testimony of W. Finn); 376:9–377:5 (Testimony of R. Bumgarner).

General Plastics' position on conversion and civil theft under Fla.Stat. § 812.014 was thus directly contradicted by the trial testimony of its own agents, based on their conduct and knowledge, and therefore found not to be well-grounded in fact.

■ Merely because critical factual concessions were obtained at trial from adverse witnesses does not necessarily make a pleading sanctionable.

However, here that trial evidence showed that the claims of conversion and theft were known to be legally impossible at the outset of the Counterclaim filing. First, that evidence made clear that responsible officers of General Plastics had acknowledged there was no "present or immediate right to possession" of a fund. Second, it was otherwise clear at the outset that the sums due General Plastics as "purchase price" under the contract were not specifically identifiable and hence not subject to claims of conversion or theft of a particular fund. *See* Conclusions at ¶¶ 21–23.

Thus, even if Capital Factors breached in any way its obligation to make purchase price payments, General Plastics' conversion and civil theft claims must fail. Capital Factors never owed General Plastics anything more than a general obligation to pay money, and General Plastics has not established that proceeds from assigned receivables were specifically identifiable property capable of being converted.

*Id.* at ¶ 23. Indeed, General Plastics' position was directly contradicted by existing law, as found in *Belford Trucking Company v. Zagar*, 243 So.2d 646 (Fla. 4th Dist.Ct.

App.1971), and its progeny. *See* Conclusions at ¶ 20.

Moreover, as found by the Court, the prompt filing by General Plastics of its action for interpleader absolved it of claims in these counts. *In re General Plastics Corp.,* 158 B.R. at 285.

General Plastics therefore pleaded and litigated Counts V and VI in the face of obvious factual and legal deficiencies that were readily apparent when the counterclaim was signed and filed. General Plastics and its attorneys thereby violated Rule 9011's stricture against claims not warranted by existing law. Under standards cited below, sanctions are appropriate under Rule 9011 for pleading and litigating Counts V and VI.

### D. *Standards for Attorneys' Fees Under Fed.R.Bankr.P. 9011*

Movant seeks Rule 9011 sanctions against General Plastics and its individual counsel for his signing of the counterclaim.

Bankruptcy Rule 9011 imposes a sanction for baseless litigation similar, although not identical, to that found in Fed.R.Civ.P. 11. It applies to filings in any case under the Bankruptcy Code, with exceptions not pertinent here. Recent amendments to Rule 11 (effective December 1, 1993) have not been duplicated in Rule 9011. Fed.R.Bankr.P. 9011 provides in pertinent part standards in language identical to former Rule 11:

The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signs it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the

reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Therefore, authorities applying these standards under former Rule 11 may still be useful in applying Bankruptcy Rule 9011.

■ Sanctions are warranted when a party files a pleading that has no reasonable factual basis or when a party files a pleading in bad faith for an improper purpose. *See Pelletier v. Zweifel,* 921 F.2d 1465, 1514 (11th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991). A subjective good faith belief in merits of the allegations will not avoid sanctions.

Rule 11 as amended incorporates an objective standard. The standard for testing conduct under amended Rule 11 is "reasonableness under the circumstances," a standard "more stringent than the original good-faith formula."

Advisory Committee Note. *Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir.1987) (citations omitted).

■ A complaint is factually groundless and merits sanctions where the plaintiff has no evidence at all to support its allegations. *See Collins v. Walden,* 834 F.2d 961 (11th Cir.1987) (sanctions followed entry of summary judgment against plaintiff). In *Davis v. Carl,* 906 F.2d 533, 537 (11th Cir.1990), the court held that the failure to produce *any* evidence to support the allegations of a pleading merits Rule 11 sanctions, although such sanctions are not appropriate when *some* evidence, albeit weak, was presented or otherwise existed to support the claim. *See also Mitchell, Williams, Selig, Jackson & Tucker v. Bratton (In re Bratton),* 119 B.R. 166 (Bankr.W.D.Ark.1990) (failure to present or demonstrate any credible evidence to support allegations of fraud or misconduct warranted sanctions); *Upadhyay v. Burse (In re Burse),* 120 B.R. 833 (Bankr.E.D.Va.1990) (attorney's fees awarded under Rule 9011 where plaintiff's evidence fell far short of proving any of the counts alleged and counsel failed to make reasonable inquiry into applicable law).

■ Compliance is to be determined by an objective standard, that of reasonableness under the circumstances. Circumstances to be considered include

> how much time for investigation was available to the signor [sic]; whether he had to rely on a client for information as to the facts underlying the pleading, motion or other paper, whether the pleading, motion or paper was based on a plausible view of the law....

*Threaf Properties, Ltd. v. Title Ins. Co. of Minnesota,* 875 F.2d 831, 835 (11th Cir.1989).

Rule 9011 provides that the signing of a pleading or other paper is a certificate that the paper *"is* well grounded in fact and *is* warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." Fed. R.Bankr.P. 9011 (emphasis added). The use of present tense language in the Rule has led some courts to adopt the so-called "snapshot rule". "Like a snapshot, Rule 11 review focuses upon the instant when the picture is taken—when the signature is placed on the document." *Thomas v. Capital Sec. Services, Inc.,* 836 F.2d 866, 874 (5th Cir.1988).

■ Application of the snapshot rule, which has been adopted by the Eleventh Circuit Court of Appeals, means that: "Rule 11 d[oes] not impose a continuing obligation on [a party] to amend" a paper which was signed in compliance with the rule. *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints v. Associated Contractors, Inc.,* 877 F.2d 938, 943 (11th Cir.1989), *reh'g denied,* 888 F.2d 1398 (11th Cir.1989), *cert. denied, Bituminous Cas. Corp. v. Corporation of Presiding Bishop of Church of Jesus Christ of Latter–Day Saints,* 493 U.S. 1079, 110 S.Ct. 1133, 107 L.Ed.2d 1038 (1990).

■ The Eleventh Circuit only requires that a party have objective good faith grounds for interposing the pleading in the first instance. *Associated Contractors,* 877 F.2d at 943.

■ Moreover, failure of proof at trial is not necessarily sufficient to support the imposition of sanctions. *Associated Contractors,* 877 F.2d at 941 (court "must focus on what was reasonable ... to believe at the time the pleadings were filed, not on what the court late finds to be the case."); *Threaf Properties v. Title Ins. Co. of Minnesota,* 875 F.2d 831, 835 (11th Cir.1989) ("The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading ... was submitted.").

The foregoing makes clear that the mere failure to offer evidence at trial, by itself, may not necessarily establish a basis for sanctions. But, obviously, demonstrated lack of evidence at trial to support a plaintiff's factual assertions or legal theories is an important element in the sanction analysis. Moreover, General Plastics has not argued that it held back any evidence at trial of which the Court is not aware.

Count II of General Plastics' counterclaim was based largely upon its contention that Capital Factors breached the agreement by reducing its advance rate from 85% to 70%. The Court found that "[t]he liberal use of discretionary language in the Agreement clearly indicates that Capital Factors had discretionary powers to reduce the advance rate." *In re General Plastics Corp.,* 158 B.R. at 284. General Plastics' claim was thus contradicted by express terms of the Agreement.

General Plastics attempted to circumvent the terms of the Agreement by alleging a contradictory "course of conduct". It failed because the weight of the evidence did not prove that the parties' course of conduct modified the provision allowing Capital Factors to reduce the advance rate in its discretion. *Id.* at 284. But that failure was not sanctionable under standards stated because the evidence was weak and insufficient, not non-existent.

Count III of the counterclaim alleged that Capital Factors tortiously interfered with the business relationships of General Plastics by terminating advances. The Court found that General Plastics failed to establish two essential elements of its claim—that the interference be both direct and intentional. *Id.* at 288.

General Plastics did not establish that Capital Factors directly interfered with General Plastics' customer relationships. Nor did it demonstrate tortious intent to interfere.

However, once again, this failure to prevail at trial did not meet the sanction standards earlier discussed. Lack of adequate proof was found as to Count III, not lack of any proof.

As to Counts V and VI, a different conclusion, however, must be reached.

For reasons discussed earlier, General Plastics did not and could not possibly demonstrate that it had an immediate right to possession of receivables held by Capital Factors or to their proceeds, nor did it or could it possibly establish that Capital Factors held a specifically identifiable fund. These were essential factual and legal elements of its claims for conversion and theft alleged in Counts V and VI of the counterclaim. Nor did General Plastics prove that Capital Factors acted with the criminal intent necessary to establish theft. But most significant, as earlier discussed, both Counts V and VI were legally impossible from the outset under facts known by General Plastics and its counsel.

▮▮▮▮ Capital Factors advised General Plastics of the deficiencies in Counts V and VI through its motions to dismiss the counterclaim and the amended counterclaim, and also in its motion for summary judgment. However, General Plastics and its counsel persisted in bringing these unsupported and unsupportable claims to trial.[2] The known absence of both a basis in fact and a basis in law warrants a sanction under Fed. R.Bankr.P. 9011.

▮▮▮▮ Such sanction should be imposed against both attorney and client in this case. The allegations of Counts V and VI of the counterclaim were legally frivolous. This frivolousness should have been obvious to General Plastics' attorneys, who nevertheless proceeded to trial and continued to make specious legal arguments for liability under those allegations. General Plastics is certainly responsible for approving the factual allegations in these counts despite knowledge by its top management of contrary facts as earlier discussed. Where attorney and client share responsibility for litigation that violates Rule 9011, then sanctions should be imposed on both jointly and severally.

While language in new Fed.R.Civ.P. 11 has not been brought into Fed.R.Bankr.P. 9011, not all of it is inconsistent. Some parts of new Rule 11(c)(2)(A) (*Nature of Sanctions; Limitations*) appear not to be inconsistent with Rule 9011. The bankruptcy judge serves as a judicial officer of the District Court. The weight of federal jurisprudence should be behind application of these standards in bankruptcy as they now are in nonbankruptcy litigation before the District Court, unless clear inconsistencies are found:

(2) *Nature of Sanction; Limitations.*

A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

Part (A) of the new Rule 11 does not appear inconsistent with Rule 9011. Part (A) bars sanctioning the client for legal mistakes by the lawyer, a most fair and proper limitation. A sanction will therefore not be imposed on General Plastics under Rule 9011 for the legal mistakes of its counsel in this

---

2. The denial of a motion to dismiss or a motion for summary judgment does not preclude a subsequent finding that there was no factual basis for the claim under Rule 11 or even constitute evidence that sanctions should not be granted, since the facts on such motions are either accepted as true or construed in the non-movant's favor. *Lemaster v. U.S.*, 891 F.2d 115, 121 (6th Cir.1989).

case in Counts V and VI. However, the sanction against it is based on its responsibility for factual allegations in these counts known by its high officers and agents to be false.

It should be noted in passing that whether new Rule 11(c)(2) can be applied in light of the mandatory language of Rule 9011 can be briefed by the parties in their further filings.

### E. Count VI (Fees Under Fla.Stat. § 772.11)

Capital Factors also claims an entitlement to recovery of attorneys' fees against General Plastics pursuant to § 772.11 of the Florida Statutes.

Count VI of General Plastics' counterclaim (as amended) sought the civil remedy for theft provided in Fla.Stat. § 772.11. Although that statute allows recovery of three-fold actual damages awarded to successful claimants, it penalizes unsubstantiated claims by authorizing award of attorneys' fees to the defendant:

> The defendant shall be entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts *upon a finding that the claimant raised a claim which was without substantial fact or legal support.* In awarding attorney's fees under this section, the court shall not consider the ability of the *opposing party* to pay such fees and costs. Nothing under this section shall be interpreted as limiting any right to recover attorney's fees or costs provided under other provisions of law.

Fla.Stat. § 772.11 (1990). (Emphasis added.)

#### 1. *This Claim Was Not Waived*

■ The first objection of General Plastics is that this claim was not pleaded by answer or affirmative defense to the counterclaim and is therefore deemed waived under Florida law. It relies on *Stockman v. Downs,* 573 So.2d 835 (Fla.1991). In *Stockman,* the court addressed decisions of the Florida District Courts of Appeals:

> Our review of the case law leads us to the conclusion that the better view is the one expressed in our earlier cases—a claim for attorney's fees, whether based on statute or contract, must be pled. (footnote omit-

ted). The fundamental concern is one of notice. Modern pleading requirements serve to notify the opposing party of the claims alleged. (citation omitted). Raising entitlement to attorney's fees only after judgment fails to serve either of these objectives.... A party should not have to speculate throughout the entire course of an action about what claims ultimately may be alleged against him. *Accordingly, we hold that a claim for attorney's fees, whether based on statute or contract, must be pled. Failure to do so constitutes a waiver of the claim.*

*Stockman,* 573 So.2d at 837 (emphasis added) (footnote omitted). Capital Factors' failure to plead an entitlement to attorneys' fees before filing the instant motion is therefore said to preclude it from now asserting a right of recovery of fees under § 772.11.

However, the holding of *Stockman* in 1991 does not always apply to statutes awarding attorney's fees for frivolous or unfounded litigation. In the later holding of *Ganz v. HZJ, Inc.,* 605 So.2d 871 (Fla.1992), the Florida Supreme Court recognized an exception to *Downs* for attorney's fees sought under Fla.Stat. § 57.105. Analogous to § 772.11, § 57.105 provides for an award of attorney's fees where there "was a complete absence of a justiciable [sic] issue of either law or fact raised by the complaint or defense of the losing party...." The Florida Supreme Court reasoned that:

> It is extremely difficult, if not impossible, for a party to plead in good faith its entitlement to attorney's fees under section 57.105 before the case is ended. We agree with the Third District's observation in *Autorico, Inc. v. Government Employees Insurance Co.,* 398 So.2d 485, 487–88 (Fla.3d Dist.Ct.App.1981):
>
> > There is certainly no way for a litigant to know in advance whether the adverse party will raise nothing but frivolous issues in a civil case and, therefore, to plead in good faith its entitlement to attorney's fees under Section 57.105.
> >
> > · · · · ·
> >
> > ... It is only after the case has been terminated that a sensible judgment can be made by a party as to whether the

adverse party made nothing but frivolous issues in the cause, and, if so, to file an appropriate motion, as here, seeking an entitlement to said attorney's fees under Section 57.105, Florida Statutes (1979).

*Id.* at 872–73. Given the similarity of the statutes, this rationale applies with equal force to § 772.11.

Moreover, the facts in *Stockman* are significant and distinguish that case. *Stockman* was not a case involving § 772.11 or any other statutory basis for fee award. The claim for fees rested on a contract right, not statute. The prevailing defendant in dispute over that contract did not seek fees by way of an affirmative defense or counterclaim. Therefore, in determining that "... a claim for attorneys' fees, whether based on statute or contract, must be pled ...", the reference to claims based on statute was *dicta.* Indeed, when the Florida Supreme Court took up *Ganz* a year later, it was to consider whether the holding in *Stockman* required that "entitlement to statutory attorneys' fees pursuant to § 57.105 Florida Statute (1991) be specifically pled." *Id.,* 605 So.2d at 872.

### 2. *Fees Are Warranted Under § 772.11*

[17] The standard of no "substantial factual or legal support" established in this section does not require a finding that the civil theft claim was completely devoid of merit. In distinguishing this statute from the bad faith litigation statute (Fla.Stat. § 57.105), the court in *Ciaramello v. D'Ambra,* 613 So.2d 1324, *review denied,* 599 So.2d 654 (Fla.1992), affirmed an award of attorney's fees under § 772.11:

> ... [T]he legislature's intent in wording section 772.11 was to discourage civil theft claims lacking either legal or factual substance by setting a less stringent standard for a fee award than the bad faith standard of section 57.105.... It was unnecessary for the court to find a complete absence of legal and factual support for the appellants' civil theft claim.

*Id.* at 947.

■ Under this standard and under the wording of § 772.11 itself, it is proper to award fees when the plaintiff does not present substantial evidence to support an essential element of its civil theft claim:

> By the grant of a directed verdict on the grounds that there was no showing of criminal intent, the trial court determined that no evidence was presented to support an essential element of the civil theft claim. Therefore, the claim of civil theft was by definition without any factual evidentiary support, let alone substantial fact, because it was missing an essential element of the claim.

*Friedman v. Lauderdale Medical Equipment Service, Inc.,* 591 So.2d 328, 329 (Fla. 4th Dist.Ct.App.1992). *See also Apple Premium Finance Service Co. v. General Star Indemnity Co.,* 609 So.2d 655 (Fla. 3d Dist. Ct.App.1993) (affirming award of fees where plaintiff failed to show that person committing theft was an agent or employee of defendant); *Moral Majority, Inc. v. Broward Cty. Ch. of the Nat. Organization for Women, Inc.,* 606 So.2d 630 (Fla. 4th Dist.Ct.App. 1992) (reversing denial of fees under similar provision of § 772.104 where no evidence presented that defendant did anything that was not protected under First Amendment).

■ In paragraph 19 of the Conclusions entered herein, and as previously discussed, this Court determined that General Plastics failed to establish the necessary element of a present or immediate right to possession of the money allegedly stolen by Capital Factors and that it had no such right due to competing, superior claims of the creditors. *In re General Plastics Corp.,* 158 B.R. at 287. General Plastics did not demonstrate at trial that these competing claims were not valid. Indeed, not only did the evidence show that General Plastics admitted the validity of the IRS claim at the time, but also that General Plastics then desired that such payment be made directly to the IRS without first coming into General Plastics' possession.

In paragraphs 20 through 23 of the Conclusions, it was also determined that General Plastics failed to establish that proceeds from assigned receivables were specific property capable of being converted or stolen. *Id.* at 287–88. The Court reached this conclusion

from clear terms of the Factoring Agreement:

> In the instant case, there is no specifically identifiable fund or money said to be converted. Capital Factors' contractual obligation was to make "purchase price" payments (as defined in the Agreement) to General Plastics in return for the assigned receivables. There was no provision mandating that Capital Factors segregate its accounts. Therefore, the money received for the purchase price was not specifically identifiable.

158 B.R. at 287; Findings at ¶ 21.

General Plastics also failed to offer any material evidence to prove the requisite element of criminal intent. Indeed, it was even found that "General Plastics has not proven by a preponderance of the evidence that Capital Factors acted in bad faith at any time relevant to this dispute." *Id.;* Findings at ¶ 18.

Lacking evidence to prove not one but three essential elements of its claim for civil theft, General Plastics raised and proceeded to try a claim which was without any merit, let alone substantial factual or legal support, and thereby imposed unwarranted defense expenses upon Capital Factors. This certainly warrants an award of attorney's fees under Fla.Stat. § 772.11.

### 3. *Fees Under § 772.11 Are Not Recoverable From Counsel*

Section 772.11 provides that a defendant may be entitled to an award of attorneys' fees, but does not specifically provide for that defendant's recovery of attorneys' fees from the opposing party's law firm or its attorneys. That provision does, however, specifically direct a court not to consider ability of the "opposing party" to pay attorney's fees. Under Florida law, statutes providing for recovery of attorney's fees are in derogation of the common law and must be strictly construed. *Roberts v. Carter,* 350 So.2d 78 (Fla.1977); *Ciaramello v. D'Ambra,* 613 So.2d 1324, 1325 (Fla. 2d Dist.Ct.App. 1991). Thus, § 772.11 strongly implies recovery only from a party, not from a party's attorney. This precludes recovery of attorney's fees from any person other than an "opposing party". Fees to be awarded under this provision will therefore be imposed only against General Plastics, not its counsel.

### CONCLUSION

By separate order, the parties are given a schedule for litigation of any remaining factual issues before precise fees may be fixed. In their filings on that schedule, the parties should cover authorities dealing with allocation of fees and expenses between sanctionable and non-sanctionable counts and between prevailing and losing issues, and whether the standards of new Rule 11(c)(2) can be applied in light of the language of Fed.R.Bankr.P. 9011.