**In re EVERGREEN SECURITY, LTD., Debtor.**

**R.W. Cuthill, Jr., Trustee, Plaintiff,**

v.

**Averett, Warmus, Durkee, Bauder & Thompson, P.A., Defendants.**

**Bankruptcy No. 01–00533–6B1.**
**Adversary No. 02–200.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Dec. 10, 2004.

R. Scott Shuker, Esq., Gronek & Latham, LLP, Orlando, FL, for plaintiff.

Pete L. Demahy, Esq., Demahy, Labrador & Drake, P.A., The Colonnade, Coral Gables, FL, for defendants.

*FINDINGS OF FACT AND CONCLU-
SIONS OF LAW REGARDING THE
DEFENDANT'S MOTION FOR
RULE 11 SANCTIONS AND MEMO-
RANDUM OF LAW*

ARTHUR B. BRISKMAN, Bankruptcy Judge.

**THIS ADVERSARY PROCEEDING** came on for hearing October 18, 2004 ("Hearing"), upon Defendant's, Averett, Warmus, Durkee, Bauder & Thompson, P.A. ("Averett" or "Defendant"), motion seeking the imposition of sanctions against R.W. Cuthill Jr. ("Plaintiff" or "Trustee"), as the Chapter 11 Trustee for the bankruptcy estate of Evergreen Security Ltd. ("Evergreen"), pursuant to Federal Rule of Bankruptcy Procedure 9011 and Federal Rule of Civil Procedure 11, filed on June 28, 2004 ("Motion") (Adv.Doc. No. 67). Upon consideration of the Motion and based upon the evidence presented by the Plaintiff and the Defendant, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Evergreen is an international business corporation that was formed on or about 1994 under the laws of the British Virgin Islands. From inception, Evergreen has been externally managed. Evergreen had no employees, and the operation of Evergreen was directed by certain outside managers. Evergreen has a board of directors consisting of three non-United States citizens. As of January 23, 2001, the board of directors consisted of Mr. Patrick Thomson ("Thomson"), Mr. Hernan Castro–Gehrels, and Mr. Edgar A. Rohrmoser.

2. Evergreen is 100% owned by Evergreen Holding Investment Corporation, A Bahamian Holding Company ("Evergreen Holding"). Until 1998, Mr. Greg White, a citizen of the Bahamas, owned Evergreen. During 1998, Mr. White transferred his shares of Evergreen to Evergreen Holding. Sometime in 1998, Evergreen Holding"s shares of Evergreen were purchased by True Investments, Inc., a Bahamian corporation, owned or controlled by Mr. William J. Zylka ("Zylka").

3. Prior to April 1998, Evergreen was managed and directed, through various management companies, by certain individuals, including Mr. Thomas Spencer ("Spencer"), Mr. Robert Boyd ("Boyd"), Mr. Thomas A. Coyle, and Mr. Martin W. Boelens, Jr. ("Boelens"). The primary management company was American Bond Partners, III, a/k/a ABP International Services ("ABP"), a Bahamian partnership. In April 1998, BJM International Services, Inc. ("BJM") became the outside manager of Evergreen.

4. Evergreen created a wholly owned trust entitled Evergreen Trust for the purpose of pooling investors funds and purchasing various investments. Most funds invested in Evergreen were nominally held in the name of various trusts including Intrados, S.A. ("Intrados") and Surety Bank & Trust Company Limited ("Surety Bank").

5. Evergreen began selling certificates as early as 1994 through numerous lawyers, brokers, investment advisors and insurance agents (collectively, the "Financial Professionals"). The Financial Professionals would receive remuneration for the sale of each certificate ranging from one percent (1%) to nine percent (9%) of the face amount of each certificate ("Commission").

6. Investors would invest in five (5) year certificates or bonds that would pay a periodic, fixed interest rate ranging from 10% to 12%. Investors would not own the individual investments on which they earned interest. However, subsequent to purchasing an investment, investors would

be issued a certificate. Typically the certificate was in the name of a trust or numbered account.

7. Ultimately, Evergreen's investment scheme collapsed. On January 23, 2001, Evergreen filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code (the "Petition Date"). As of the Petition Date, approximately $214 million of the certificates remain unpaid and outstanding.

### INVESTIGATION PRIOR TO FILING ADVERSARY PROCEEDING

#### AVERETT 2004 EXAMINATION

8. On March 8, 2001, the Official Committee of Unsecured Creditors ("Committee") filed an Emergency Motion to Compel the Attendance of the Corporate Representative of Averett at a Federal Rule of Bankruptcy Procedure 2004 examination (Doc. No. 69).

9. On March 9, 2001, the Court entered an order compelling the corporate representative of Averett to appear at a Federal Rule of Bankruptcy Procedure 2004 examination (Doc. No. 76).

10. On March 14, 2001, R.W. Cuthill, Jr., the Plaintiff, was appointed as the Chapter 11 Trustee to investigate, recover, and distribute assets primarily to unpaid investors.

11. On March 23, 2001, Mary B. Meeks filed a Notice of Appearance and Request for Service on behalf of Averett (Doc. No. 114). In addition, on March 23, 2001, the Committee, pursuant to Federal Rule of Bankruptcy Procedure 2004, deposed Mr. Thomas Durkee as the corporate representative of Averett ("Averett 2004 Examination"). Ms. Meeks represented Mr. Durkee, as the corporate representative of Averett, at the Averett 2004 Examination.

12. During the Averett 2004 Examination, Mr. Durkee testified in response to the question of why Boelens would be getting a compilation report in the fall of 2000 ("Compilation Report"), that he [Durkee] "assumed it was for the same purpose that anybody would get a financial statement, because they have people that they might need to show it to. And really who that was, was not my concern. But I was aware that he [Boelens] was going to have a gathering, a meeting, in Orlando ('Evergreen Fund Meeting') and that he *wanted to be able to show the people who were attending this meeting [Financial Professionals] some numbers that reflected that the fund was okay.* And I use that term generically."

13. In addition, Mr. Durkee testified at the Averett 2004 Examination, that he was aware Boelens took copies of the Compilation Report to the Evergreen Fund Meeting to show the attending Financial Professionals. Subsequently, the Plaintiff learned that approximately fifty (50) copies of the Compilation Report were delivered to the Evergreen Fund Meeting by Averett.

#### DISCUSSIONS WITH POTENTIAL WITNESSES

14. On June 8, 2001, Zylka, his attorney Mr. James P. Conroy ("Conroy"), and Boelens were indicted in New York County on two or more counts of Grand Larceny in the First Degree for thefts of over $1,000,000.00 from Evergreen. Boelens was charged with aiding Zylka and Conroy with two additional thefts from Evergreen that occurred in the spring and summer of 2000.

15. Subsequent to Boelens' indictment and throughout the course of the New York Grand Jury's investigation into Evergreen, Boelens continued to invoke his Fifth Amendment rights against self-incrimination. However, based upon com-

munications with counsel for Boelens on or about July 28, 2001, counsel for the Plaintiff was advised that the Compilation Report was to be disseminated at the Evergreen Fund Meeting to the Financial Professionals.

16. In addition, Mr. Boelens informed counsel for the Plaintiff that he personally relied on the Compilation Report to advise him on whether the fund was solvent and he relied on the Compilation Report in discussions with the Board of Directors for both Evergreen and Evergreen Holding.

17. Furthermore, on or about April 2002, the Plaintiff engaged the services of Bill Michaelson, C.P.A. to render an expert opinion on Averett's preparation of the Compilation Report. According to Mr. Michaelson, there is a legal theory under which even a compilation can give rise to a claim of malpractice and based upon his review of the Compilation Report, Averett committed malpractice by issuing the report.

### PROCEDURAL BACKGROUND OF ADVERSARY PROCEEDING

18. On July 26, 2002, the Trustee filed an adversary proceeding (Adv. No. 02–200, the "Adversary Proceeding") against the Defendant seeking damages for: (i) Professional Negligence (Count I); and (ii) Negligent Misrepresentation (Count II) relating to accounting services performed by Averett for Evergreen in a wanton, willful and/or reckless manner (the "Complaint").

19. The factual allegation for the Complaint was that Averett compiled a false and misleading balance sheet which showed that Evergreen's assets were equal to its liabilities even though Averett knew or should have known that Evergreen was woefully insolvent, with investor liabilities exceeding its total assets by approximately $190 million when the balance sheet was compiled. (Complaint ¶¶ 13–14). In compiling the balance sheet, Averett deviated from the professional standards that govern certified public accountancy in many respects. (Complaint ¶ 16). As a result of Averett's actions, Evergreen continued to incur new investor liabilities (and other debts) and suffered deepening insolvency. (Complaint ¶ 15).

20. Subsequent to filing the Complaint, counsel for the Plaintiff spoke with Thomson, a member of Evergreen's Board of Directors and defendant in the adversary proceeding styled *R.W. Cuthill, Jr., Trustee v. Lions Gate Management Ltd. and Patrick Thomson*, adversary number 02–116, regarding the Compilation Report. Thomson informed counsel for the Plaintiff that he was shown the Compilation Report by Boelens, relied on the Compilation Report to demonstrate the solvency of Evergreen, and had he known that Evergreen was in fact insolvent he would have caused Evergreen to file bankruptcy in September 2000. Up until Thomson's testimony at trial, his testimony concerning his reliance on the Compilation Report did not change.

21. On September 13, 2002, Averett filed a Motion to Dismiss the Complaint on the following grounds: (i) the fraud of Evergreen's upper management and/or BJM should be imputed to the Plaintiff; and (ii) that reliance on the Compilation Report was unjustified as a matter of law. (Adv.Doc. No. 4).

22. On July 25, 2003, the Court entered an order denying the Defendant's Motion to Dismiss the Complaint (Adv.Doc. No. 23).

23. On April 1, 2004, Averett filed a Motion for Summary Judgment and Memorandum of Law on the same grounds as identified in the Motion to Dismiss (Adv. Doc. No. 35). The Defendant argued that

as a matter of law based upon the deposition testimony of Boelens and Thomson: (i) no reliance was made on the Compilation Report, which was misrepresented and ignored by the directors of Evergreen; and (ii) the fraud committed by Boelens as manager of Evergreen should be imputed to the Plaintiff.

24. On April 22, 2004 the Court denied Averett's Motion for Summary Judgment (Adv.Doc. No. 58) and the Adversary Proceeding proceeded to trial. At the close of the Plaintiff's case, the Defendant moved *ore tenus* for a directed verdict. Again the Court denied the Defendant's motion, and the Defendant proceeded to put on evidence in its defense. Although the Plaintiff survived the Motion to Dismiss, the Motion for Summary Judgment, and the Motion for a Directed Verdict, at trial the Court did not find any credible evidence of reliance by Evergreen or anyone else on the Compilation Report. *See Final Order p. 2* (Adv.Doc. No. 65). Although Boelens testified that he relied on the Compilation Report, the Court did not find his testimony credible. Furthermore, Thomson's testimony changed from his deposition testimony, and he testified that he did not really review the Compilation Report, was not sure of the accounting significance of a compilation, and was unsure as to whether he could have filed bankruptcy for Evergreen in September 2000. Accordingly, judgement was entered in favor of the Defendant. *See Final Order p. 3* (Adv. Doc. No. 65).

25. Plaintiff made a reasonable inquiry of the facts and filed the complaint with a good faith belief in its factual allegations. The complaint was not filed for any improper purpose, to harass, cause unnecessary delay or needless increase in the cost of litigation. The factual allegations in Plaintiff's complaint were made in good faith. The legal arguments in Plaintiff's complaint were not frivolous.

## CONCLUSIONS OF LAW

### RULE 11 SANCTIONS

■ 1. Sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011, like Federal Rule of Civil Procedure 11, are properly assessed: (1) when a party files a pleading that has no reasonable factual basis; (2) when a party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose. *See Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir.2001) (quoting *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)).

■ 2. A court ruling on a motion for Rule 11 sanctions must make a "two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *See Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir.1998).

■ 3. Rule 11 stresses the need for some prefiling inquiry. *See Mike Ousley Productions, Inc. v. WJBF–TV*, 952 F.2d 380, 382 (11th Cir.1992). The reasonableness of the inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the underlying facts; or whether he depended on forwarding counsel or another member of the bar. *See id.* (quoting Advisory Committee Note to Rule 11, as amended in 1983).

■ 4. Although sanctions are warranted when the plaintiff exhibits a "delib-

erate indifference to obvious facts," they are not warranted when the plaintiff's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law. *See Davis v. Carl,* 906 F.2d 533, 537 (11th Cir.1990); *Threaf Properties Ltd. v. Title Insurance Company of Minnesota,* 875 F.2d 831, 835–36 (11th Cir.1989). A complaint is factually groundless and merits sanctions where the plaintiff has absolutely no evidence to support its allegations. *See In re General Plastics Corp.,* 170 B.R. 725, 731 (Bankr.S.D.Fla.1994).

5. The court's inquiry should only focus on the merits of the pleading gleaned from the facts and law known or available to the attorney *at the time of filing. See Jones v. International Riding Helmets, Ltd.,* 49 F.3d 692, 694–95 (11th Cir.1995) (original emphasis).

6. A court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. *See Souran v. Travelers Ins. Co.,* 982 F.2d 1497, 1506 (11th Cir.1993) (quoting Fed.R.Civ.P. 11 Advisory Committee Note).

7. In the instant Adversary Proceeding, prior to filing the Complaint, counsel for the Plaintiff obtained and reviewed the Averett 2004 Examination, questioned Boelens and his attorney concerning the engagement of Averett and the Compilation Report, and obtained an expert to advise the Trustee on the viability of recovery from an accounting firm on the legal theory of professional negligence and negligent misrepresentation. Based upon the Plaintiff's investigation, there was evidence: (i) that the Compilation Report was used or intended to be used to bolster the credibility of Evergreen and demonstrate its solvency; (ii) that Boelens intended to distribute the Compilation Report to the Financial Professionals at the Evergreen Fund Meeting; (iii) that Averett knew Boelens intended to distribute the Compilation Report to the Financial Professionals for the purpose of demonstrating Evergreen's solvency; and (iv) the Compilation Report erroneously reported that Evergreen was solvent.

8. Based on these facts and the unavailability of witnesses due to the assertion of Fifth Amendment rights, the Plaintiff and his attorney had sufficient reason to believe that Averett may have committed professional negligence and made negligent misrepresentations in connection with the Compilation Report to Boelens on behalf of Evergreen and the Financial Professionals.

9. Furthermore, the Complaint survived the Motion to Dismiss and the Motion for Summary Judgment. Whereas losing a motion for summary judgment does not mean that the plaintiff's action was frivolous, the converse of winning a motion for summary judgment does indicate that the Plaintiff has presented such evidence as would create a genuine issue of material fact and the Complaint is not frivolous. *See O'Neal v. DeKalb County, Georgia,* 850 F.2d 653, 658 (11th Cir.1988).

10. Plaintiff and his attorney had a good faith belief that the Complaint was well grounded in fact at the time of filing the Complaint. Neither Plaintiff nor his counsel had reason to believe that the factual allegations were frivolous at the time counsel signed the Complaint.

Accordingly, the Defendant's, Averett, Warmus, Durkee, Bauder & Thompson, P.A. motion seeking the imposition of sanctions against R.W. Cuthill Jr., as the Chapter 11 Trustee for the bankruptcy estate of

Evergreen Security Ltd., is due to be **DENIED**.