622 So.2d 47 (1993)
Cam GAMBOLATI, Appellant,
v.
Norman SARKISIAN, Appellee.
No. 92-2105.
District Court of Appeal of Florida, Fourth District.
July 14, 1993.
*48 David S. Romanik of Romanik, Lavin & Huss, Hollywood, for appellant.
No brief filed for appellee.
PER CURIAM.
Cam Gambolati, defendant below, appeals an order denying his entitlement to attorney's fees and costs pursuant to the civil theft statute. We reverse and remand with direction to proceed in accordance with this opinion. Norman Sarkisian, plaintiff below, has failed to file an answer brief to rebut the arguments raised by Gambolati herein.
In 1985, Sarkisian hired Gambolati, a trainer and owner of thoroughbred horses racing in Dade and Broward Counties, to train his Florida horses. Gambolati billed Sarkisian on a monthly basis for the training expenses. In time, the two became friends and spoke on average three times a week.
In late 1988, Sarkisian purchased a fifty percent interest in Devil's View, a horse owned and trained by Gambolati. The two agreed to share equally in both the training expenses and in any winnings. In 1989, Gambolati and Sarkisian became partners in another horse, Highway Lady. Gambolati, Sarkisian, and David Winepol each owned a one-third interest in Highway Lady. Gambolati trained Highway Lady, and each partner paid one-third of the horse's training expenses and was in turn entitled to one-third of all purse money earned. At the same time Gambolati was training Devil's View and Highway Lady, he was also training two other horses (Big Sal and Spirited Lady) owned in whole or part by Sarkisian.
Gambolati raced the horses he trained at both Gulfstream Park and Calder Race Track. According to Gambolati, the tracks establish a "horseman's account" for each horse and the owners of the horse are listed as joint owners of the account. When a horse wins money, the net purse is deposited into the joint account. Each owner whose name appears on the horseman's account has the authority to withdraw all of the funds at any time. Gambolati established accounts for both Devil's View and Highway Lady at both tracks. Devil's View's account was established in the names of C. Gambolati and N. Sarkisian, and Highway Lady's account was established in the names of "David Winepol, C. Gambolati, et al."
*49 During 1989 and 1990, Devil's View and Highway Lady won races at Calder and Gulfstream, and the net purses were deposited into their accounts. According to Gambolati, he was still speaking to Sarkisian three times a week and immediately advised Sarkisian when either Devil's View or Highway Lady earned purse money. Sarkisian never asked for his share of the purses at this time. Gambolati sent Sarkisian bills for training expenses for all of Sarkisian's horses, including Devil's View and Highway Lady, and Sarkisian paid these bills. While Gambolati did send Sarkisian the monies won by horses in which Gambolati did not have any ownership interest, he withdrew the purse money earned by Highway Lady and Devil's View from the respective accounts. According to Gambolati, he did not intend to steal the money; rather, he ultimately intended to pay Sarkisian his pro rata share.
Gambolati did not send Sarkisian bills for training expenses for June, July, or August 1990. The expenses allegedly totalled $14,108. Gambolati withheld sending the bills so that he could offset the expenses against Sarkisian's share of the retained purse money.
In early August 1990, Sarkisian travelled to Florida to watch Devil's View race. After the race, Gambolati and Sarkisian discussed the purse money earned by Highway Lady and Devil's View. Gambolati purportedly told Sarkisian that he had retained his share of the purse money and had offset the training expenses. Sarkisian told Gambolati to send him a bill for the $14,000 and that he would send a check the next day. In return, Gambolati agreed to send Sarkisian a check for the money that he owed him. After Sarkisian paid the bills for the training expenses, Gambolati sent Sarkisian checks totalling $11,000 toward the amount he owed.
In November 1990, Sarkisian demanded the balance of his portion of the purses earned by Devil's View and Highway Lady. A dispute arose as to the amount owed, and in January 1991, Sarkisian filed suit against Gambolati. Sarkisian sought: (1) partition of Devil's View and Highway Lady, (2) an accounting of the purses won by the two horses, and (3) damages for conversion and civil theft of Sarkisian's share of the purse money.
Both Highway Lady and Devil's View were sold, thereby resolving Sarkisian's partition claim. Before trial, Gambolati and Sarkisian entered into a pretrial stipulation resolving all issues regarding the amounts owed one another. The purse money owed to Sarkisian, after subtracting the training expenses owed to Gambolati, totalled $8,788.05. As a result, the parties agreed that there was "no longer any need to try [Sarkisian's] claim for an accounting... ." The only issues remaining for trial were whether Gambolati's actions constituted conversion and/or civil theft.
After a two day trial, the trial court entered its final judgment in this matter. Pursuant to the pretrial stipulation, the court entered judgment for $10,383.04 ($8,788.05 plus prejudgment interest in the amount of $1,594.99) on Sarkisian's claim for an accounting. The court entered judgment in favor of Gambolati on Sarkisian's claims for conversion and civil theft, specifically finding "that the facts did not justify a claim for civil theft and that there was no intention to retain monies wrongfully." The court retained jurisdiction to assess attorney's fees and costs. Shortly thereafter, Gambolati filed a motion for attorney's fees incurred in successfully defending Sarkisian's civil theft claim. On June 16, 1992, the trial court filed a written order denying Gambolati's motion. The instant appeal followed.
Gambolati asserts that he is entitled to attorney's fees pursuant to section 812.035(7), Florida Statutes (1991), as the prevailing party on Sarkisian's claim for civil theft. Section 812.035(7) provides in pertinent part that "[t]he defendant shall be entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim which was without substantial fact or legal support." As Gambolati asserts, the fact that Sarkisian ultimately prevailed on the accounting claim does not affect his prevailing party status with regard *50 to Sarkisian's cause of action for civil theft. Friedman v. Lauderdale Medical Equip. Serv., Inc., 591 So.2d 328 (Fla. 4th DCA 1992). Therefore, Gambolati need only demonstrate that the civil theft claim was without substantial fact or legal support. We conclude he demonstrated an absence of the latter.
In the instant case, the purse money earned by the horses was placed in their respective accounts, to which each owner purportedly had access. While a portion of this money clearly was owed to Sarkisian, the winnings were joint funds. When Sarkisian asked for his portion of the purse money, a dispute arose as to the precise amount Gambolati owed to Sarkisian due at least partially to the fact that Sarkisian still owed Gambolati money for training expenses. A debt which may be discharged by the payment of money in general cannot form the basis for conversion. See Capital Partners Inv. Co. v. American Inv. Group, Inc., 500 So.2d 249 (Fla. 4th DCA 1986); Rosen v. Marlin, 486 So.2d 623 (Fla. 3d DCA), rev. denied, 494 So.2d 1151 (Fla. 1986). The money owed Sarkisian was not clearly identifiable in that it was neither delivered all at one time nor segregated from that portion of the purse money belonging to Gambolati or Winepol. In bringing suit against Gambolati, Sarkisian was seeking to enforce an obligation to pay money and nothing more. Because Gambolati was a co-owner of the horseman's accounts for Devil's View and Highway Lady and Gambolati was not required to pay to Sarkisian the identical monies he collected, Sarkisian's civil theft claim was deficient as a matter of law.
In sum, Gambolati's breach of his obligation to pay a portion of the purse monies to Sarkisian cannot constitute civil theft because "an action in tort is inappropriate where the basis of the suit is a contract, either express or implied." Belford Trucking Co. v. Zagar, 243 So.2d 646, 648 (Fla. 4th DCA 1970). Consequently, Sarkisian's civil theft claim was without substantial legal support and the trial court erred in denying his motion for attorney's fees under sections 812.035(7) and 772.11, Florida Statutes (1991). Accordingly, we remand for a determination of attorney's fees expended on the civil theft count.
DELL, C.J., and ANSTEAD and GLICKSTEIN, JJ., concur.