**In re GENERAL PLASTICS CORP., Debtor.**

**CAPITAL FACTORS, INC., Plaintiff,**

v.

**GENERAL PLASTICS CORP., Defendant.**

**Bankruptcy No. 91–12375–BKC–AJC.
Adv. No. 91–0579–BKC–AJC–A.**

United States Bankruptcy Court,
S.D. Florida.

July 11, 1995.

Michael D. Ullman, Ullman & Ullman, North Miami Beach, FL, for plaintiff.

Paul D. Friedman, Friedman Rodriguez & Ferraro, D. Jean Ryan, Miami, FL, for defendant.

### MEMORANDUM OPINION ON MOTION OF GENERAL PLASTICS AND FRIEDMAN TO RECONSIDER ORDER ALLOWING SANCTIONS UNDER COUNTS V AND VI

JACK B. SCHMETTERER, Bankruptcy Judge, Sitting by Designation.

### INTRODUCTION

Following bifurcated trial on liability before the Court, Findings of Fact and Conclusions of Law ("Findings and Conclusions") were made and entered. *Capital Factors, Inc. v. Homeline Corp. (In re General Plastics Corp.,* 158 B.R. 258 (Bankr.S.D.Fla. 1993)) (Schmetterer, J., sitting by designation). It was then determined that Plaintiff–Counterdefendant Capital Factors, Inc. ("Capital Factors") was not liable to Defendant–Counterplaintiff General Plastics Corp. ("General Plastics") on Counts II, III, V, and VI of General Plastics' counterclaim. It was further ordered that final judgment would be entered in favor of Capital Factors on these counts, dismissing them when the case was completed.

The remaining damage issues were set for trial, but the parties entered into a settlement stipulation ("Stipulation"), approved November 1, 1993. Pursuant thereto, it became unnecessary to try the damage issues. However, there remained for ruling the pending motion filed by Capital Factors (as amended), seeking sanctions in the form of attorneys' fees and expenses on Counterclaim Counts II, III, V, and VI, pursuant to Fed.R.Bankr.P. 9011 and Fla.Stat. ch. 772.11 (1994). Following consideration of filings by the parties and for reasons stated in an opinion ("Opinion"), the motion for sanctions was allowed as to Counts V and VI (alleging

conversion and civil theft) and denied as to Counts II and III. *Capital Factors, Inc. v. General Plastics Corp. (In re General Plastics Corp.)*, 170 B.R. 725 (Bankr.S.D.Fla. 1994)) (Schmetterer, J., sitting by designation).

The parties were then ordered to make further filings as to the amounts of the sanctions to be considered. They have done so, but General Plastics and its counsel, Paul D. Friedman ("Friedman"), have also moved for reconsideration of the rulings allowing sanctions as to Counts V and VI. That motion was briefed and considered. Following initial briefing, Friedman argued that he had been denied an opportunity to state arguments and assert facts on his own behalf. The briefing schedule was then reopened for the purpose of taking any briefings and filings that he sought to make in that regard. His supplemental filings and that of Capital Factors have now been made and considered.

Friedman supported his position with several affidavits. While Capital Factors questioned the accuracy of these affidavits in certain particulars, it filed no contrary affidavits showing fact issues and did not request time for discovery. Therefore, pursuant to prior procedural order governing this sanction proceeding, well-pleaded factual assertions in the affidavits filed by Friedman are taken as uncontested. However, the legal conclusions and opinions contained in those affidavits are viewed as additional arguments or viewpoints that have been considered.

Because of the settlement stipulation, the instant motion is moot as to General Plastics albeit not formally withdrawn. What is decided here affects only Friedman.

For reasons stated below, the motion of General Plastics and Friedman for reconsideration of the order allowing Rule 9011 sanctions as to Counterclaim Counts V and VI is entirely denied.

## DISCUSSION

**1. Standards for Reconsideration Under Fed.R.Civ.P. 59, Fed.R.Bankr.P. 9023**

The purpose of a motion for reconsideration "is to allow the court to reevaluate the basis for its decision. [Such motions] are appropriate when the court has made an error in interpreting facts or law or when

there has been a significant change in the law or facts since the submission of the issue to the court." *Keyes v. National R.R. Passenger Corp.*, 766 F.Supp. 277, 280 (E.D.Pa. 1991) (citations omitted).

However, motions for reconsideration should not be used to raise arguments which could and should have been raised before the judgment or order is entered. *Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir.1990). In the interest of judicial economy and the finality of orders, a court need not allow itself to be imposed upon by the presentation of theories *seriatim. Id.*

Neither should a motion for reconsideration be employed to reargue the factual and legal arguments already considered by the court:

The Court's reconsideration of a prior order is an extraordinary remedy. Exercise of this power must of necessity be used sparingly. When issues have been carefully considered and decisions rendered, the only reason which should commend reconsideration of that decision is a change in the factual or legal underpinning upon which the decision was based. [citations omitted.] The movant must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. [citations omitted.]

*Taylor Woodrow Const. Corp. v. Sarasota/Manatee Airport Auth.*, 814 F.Supp. 1072 (M.D.Fla.1993); *see also Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D.Fla.1994).

A number of issues raised by Friedman are really rearguments of issues earlier decided against him at trial and in the sanction ruling. The Court was under no obligation to pass on the same issues again, but in cautious effort to avoid missing an important point, all of these issues have been reconsidered.

**2. Order Denying Plaintiff's Motion to Dismiss Amended Counterclaim Did not Establish Factual Sufficiency of Conversion and Theft Counterclaims in Counts V and VI**

Friedman places great weight on a pretrial ruling by another judge that denied dismissal of Counts V and VI.

The effect of denial of Capital Factors' motion to dismiss the amended counterclaim was considered in footnote 2 of the Memorandum Opinion on the motion for sanctions. 170 B.R. at 733 n. 2. *Lemaster v. United States*, 891 F.2d 115, 121 (6th Cir.1989) (*per curiam*), was cited there for the proposition that denial of a motion to dismiss is not dispositive of the evidentiary sufficiency of a claim because the facts and legal conclusions alleged in the pleading are accepted as true for purposes of considering such motion.

Counts V and VI of the amended counterclaim of General Plastics were found following trial to be frivolous and sanctionable for three reasons: (1) the officers of General Plastics acknowledged at trial that they had authorized Capital Factors to pay contractually due monies to the Internal Revenue Service ("IRS"); therefore Counterplaintiff had no immediate right or claim to possession of the funds in question and had no basis to charge that Capital Factors stole or converted those monies; (2) the sums due to General Plastics as "purchase price" under the contract were not specifically identifiable so as to be subject to claims of conversion or theft; and (3) the prompt filing by Capital Factors of its action for interpleader absolved it of these claims. Count VI was found to be frivolous on the additional ground that there was no evidence of the intent necessary to prove theft.

Of these issues, the only one before the prior Bankruptcy Judge passing on the motion to dismiss was the second.

On the issue of specifically identifiable property, the opinion and order denying dismissal on motion properly accepted as true for purposes of that ruling General Plastics' allegation that the sums due were specifically identifiable:

Capital Factors maintains that the moneys which General Plastics claims were converted are not capable of separate identification. General Plastics disagrees. In the counterclaim, General Plastics alleges that Capital Factors had on hand a specifically identifiable sum of money belonging to General Plastics and, took that money, knowing that it had no right to take it for its own use, specifically:

the Asset wrongfully converted by Factors is capable of separate identification . . .

(See par. 25 of the counterclaim). For the purposes of a motion to dismiss: "the material allegations of the complaint are taken as admitted. . . ." [citations omitted]. *Thus, the court in considering the Motion, must take as true General Plastics' allegations that a specifically identifiable sum of money is at issue.* Hence, General Plastics has sufficiently identified the sum of money it alleges Capital Factors converted, and the Motion, to this extent, must be denied.

Order Denying Capital Factors' Motions to Dismiss (Nov. 1, 1992) at 10–11 (emphasis added).

█ The motion for sanctions was granted in light of evidence as actually presented at trial. The earlier denial of dismissal based on conclusory notice pleading under federal practice cannot immunize parties or their counsel from sanctions in light of the actual evidence.

### 3. *"Purchase Price" Was Not Specifically Identifiable for Purposes of Conversion and Theft Counts*

In the Opinion as to which reconsideration is sought, this Court deemed it

clear at the outset that the sums due General Plastics as "purchase price" under the contract were not specifically identifiable and hence not subject to claims of conversion or theft of a particular fund (*see* Conclusions at ¶¶ 21–23 . . . as General Plastics' position was directly contradicted by existing law, as found in *Belford Trucking Company v. Zagar*, 243 So.2d 646 (Fla. 4th Dist.Ct.App.1971)), and its progeny.

170 B.R. at 730–31. Movants now argue that, while *Belford Trucking* provided some examples of money that is "specifically identifiable," Florida courts have since expanded that list after that case was decided 1971 so as to include monetary amounts due capable of specific calculation.

The motion to reconsider refers to *C & W Leasing, Inc. v. Orix Credit Alliance, Inc.*, 957 F.2d 815 (11th Cir.1992), where the Elev-

enth Circuit reinstated a jury verdict awarding damages for conversion against a lender, for the lender's failure to refund an overpayment of the debt owed it. *Id.* at 823. In so doing, the court held that, since the amount of the overpayment was determinable by a specific method of calculation, the property converted was capable of specific identification. *Id.* Movants now assert that the "Purchase Price" that General Plastics claims was converted is similarly capable of such calculation (pursuant to the formula specified in the Factoring Agreement between the parties).

Moreover, they point to one small "fund" asserted to be specifically capable of calculation. After providing General Plastics with its monies pursuant to this Court's July 1992 turnover order, Capital Factors informed General Plastics that it had collected an additional $4,642.77 from General Plastics' customers. However, Capital Factors did not then turn those monies over to General Plastics. It was not until November 20, 1992, that Capital Factors turned over these additional funds to General Plastics. At a minimum, movants say, these monies were themselves capable of specific identification.

Apart from *C & W Leasing,* movants rely on an opinion entered in Florida's Middle District, holding that "[i]n an action for conversion of money, the money must be specific money that is capable of identification." *Navid v. Uiterwyk Corp.,* 130 B.R. 594, 595 (M.D.Fla.1991) (*citing Allen v. Gordon,* 429 So.2d 369 (Fla. 1st Dist.Ct.App.1983) (*referring to Belford Trucking,* 243 So.2d at 646)). The monies that the *Allen* court found to have been converted were funds in two bank accounts (and withdrawn by an account signatory to the detriment of the other account signatories). The *Allen* court noted that "[t]he two accounts involved here were separate ascertainable amounts and accounts." *Allen,* 429 So.2d at 371.

Movants reason from this that, under Florida law, the amount referred to in the Factoring Agreement as the "Purchase Price" is capable of being found "specific and identifiable." The Factoring Agreement defined that term, and Capital Factors' own ledgers tracked, traced, and identified its components. It is therefore argued that, under

authority of decisions such as *Allen,* the "Purchase Price" in this case was specifically identifiable.

■ To the contrary, the applicable Florida rule of law set forth in *Belford Trucking,* 243 So.2d at 648, is that an indebtedness which may be discharged by payment of money in general cannot support an action for conversion or theft. This principle has been repeatedly endorsed by subsequent Florida authorities. *See Gambolati v. Sarkisian,* 622 So.2d 47, 50 (Fla. 4th Dist.Ct.App. 1993) (*per curiam*); *Rupp v. Schon,* 608 So.2d 934, 935 (Fla. 4th Dist.Ct.App.1992); *Futch v. Head,* 511 So.2d 314, 320–21 (Fla. 1st Dist.Ct.App.), *rev. denied,* 518 So.2d 1275 (Fla.1987); *Capital Partners Inv. Co., Inc. v. American Inv. Group, Inc.,* 500 So.2d 249, 250 (Fla. 4th Dist.Ct.App.1986), *reh'g denied;* *Rosen v. Marlin,* 486 So.2d 623, 625 (Fla.3d Dist.Ct.App.), *rev. denied,* 494 So.2d 1151 (Fla.1986); *Plotch v. Gregory,* 463 So.2d 432, 436 (Fla. 4th Dist.Ct.App.1985); *Schimmel v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 464 So.2d 602, 605 (Fla.3d Dist.Ct.App.1985); *Capital Bank v. G & J Invs. Corp.,* 468 So.2d 534, 535 (Fla.3d Dist.Ct.App.1985); *Douglas v. Braman Porsche Audi, Inc.,* 451 So.2d 1038, 1039 (Fla.3d Dist.Ct.App.1984) (*per curiam*); *Kee v. Nat'l Reserve Life Ins. Co.,* 918 F.2d 1538, 1541 (11th Cir.1990); *Advanced Surgical Technologies, Inc. v. Automated Instruments, Inc.,* 777 F.2d 1504, 1507 (11th Cir.1985) (*per curiam*).

This issue was earlier briefed by the parties and decided by this Court in connection with the original Findings and Conclusions following trial and also in connection with Capital Factors' motion for sanctions.

■ As noted, General Plastics and Friedman rely primarily on *C & W Leasing, Inc. v. Orix Credit Alliance, Inc.,* 957 F.2d 815 (11th Cir.1992). This case is distinguishable because it involved a specific sum of money which should have been delivered in its entirety to another. As pointed out by this Court in its original Conclusions of Law, Capital Factors had no obligation to turn over to General Plastics the particular monies received by it as proceeds of the accounts receivable. 158 B.R. at 288. There

was found to be no separate account or segregated fund containing sums due to General Plastics. Capital Factors simply owed a general obligation to pay General Plastics the Purchase Price as defined by the Factoring Agreement. This was clearly an obligation which might have been discharged by the payment of money generally.

Movants cannot now claim that their legal theory was warranted as a good faith argument for the extension, modification, or reversal of existing law because they in fact never made such an argument. "The only way to find out whether a complaint is an effort to change the law is to examine with care the arguments counsel later adduce." *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1082 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988). *See also Smith v. Nat'l Health Care Servs. of Peoria*, 934 F.2d 95, 97 (7th Cir.1991). Furthermore,

> [a]n attorney must be clear in presenting his argument for what it is—if acceptance of the argument would require the extension, modification, or reversal of existing law, Rule 11 requires disclosure and precludes presentation of the argument as though it rested on existing law.

*Pierce v. Commercial Warehouse*, 142 F.R.D. 687, 690 (M.D.Fla.1992).

Friedman and General Plastics never made any argument that *Belford Trucking* and its progeny should be reversed or modified or extended. Instead, they argued that it did not apply to this case. This tactic cannot be called an effort to alter the law. *Szabo Food Service*, 823 F.2d at 1082.

General Plastics and Friedman cite a number of cases in their reconsideration motion for the proposition that Florida courts have expanded the concept of conversion claims to instances involving monies, hence warranting their argument for an extension of the law to cover the "Purchase Price" payments in this case. Those cases, however, all involved specifically identifiable funds or segregated monies. They are clearly distinguishable for the same reasons on which this Court distinguished *Aero Int'l Corp. v. Fla. Nat'l Bank of Miami*, 437 So.2d 156 (Fla.3d Dist.Ct.App.

1983), *rev. denied*, 449 So.2d 264 (Fla.1984), in its Conclusions of Law. 158 B.R. at 288.

These newly cited cases are inapplicable to situations like the one involved here. Where a contracting party receives proceeds which in turn trigger a contractual obligation to pay monies (but not those exact monies) to the other contracting party, the failure to do so cannot be the subject of a conversion action. *See e.g., Rosen v. Marlin*, 486 So.2d at 625; *Kee*, 918 F.2d at 1541; *Advanced Surgical Technologies, Inc.*, 777 F.2d at 1507. That was the case as to all monies and obligations involved here. Thus, there was no identifiable fund here to be stolen or converted.

### 4. Although Fund Was Not Identifiable, Friedman's Contrary Argument Was Not Necessarily Frivolous

Although Friedman was in error as to the identifiability of the fund in issue here, it no longer appears appropriate to find the issue so clear that the losing argument was frivolous. Prior to filing the verified amendment to the verified counterclaim, Friedman studied the then-current state of the law in Florida (on, among other things, the issue of specific identification of the "purchase price") and believed that his position was warranted by existing law. *See* Affidavit of Friedman, ¶¶ 9, 13. Some recent decisions applicable to this jurisdiction provide a measure of arguable support for Friedman's pre-filing reasoning.

While distinguishable, *C & W Leasing, Inc.*, 957 F.2d at 815, reinstated a jury verdict awarding damages for conversion against a lender, for the lender's failure to refund an overpayment of a debt owed it. *Id.* at 823. In so doing, the court held that, since the amount of the overpayment was determinable by specific calculation, the monies converted were capable of specific identification. A Bankruptcy Judge in Florida's Middle District reasoned similarly under Florida law, holding that "[i]n an action for conversion of money, the money must be specific money that is capable of identification," and finding that an amount of money to be paid in settlement of a claim for property damage (which amount was determin-

able by mathematical calculation), but instead paid to another creditor, is "specific money which was capable of identification." *Navid*, 130 B.R. at 595 (*citing Allen*, 429 So.2d at 369 (*referring to Belford Trucking*, 243 So.2d 646)). The monies that the *Allen* court found to be "specific and identifiable" were funds located in two bank accounts (and withdrawn by an account signatory to the detriment of the other account signatories). *Allen*, 429 So.2d at 371. The *Allen* court noted that "[t]he two accounts involved here were separate ascertainable amounts and accounts." *Id.*

The "purchase price" that General Plastics claimed to have been converted could have been viewed by Friedman as arguably no less capable of determination by specific calculation than the monies determined to be capable of specific identification by the *C & W Leasing, Inc., Navid*, and *Allen* courts.

■ Rule 9011 sanctions are not meant to deter or punish aggressive but reasoned advocacy, even though the pleader is ultimately found wrong. While this Court concluded that Friedman's legal analysis was defective, it is clear that "[t]he duty to conduct a reasonable pre-filing inquiry into the law does not require that the signer ultimately be proved correct in his view of the law." *Dennis v. Pan American World Airways, Inc.*, 746 F.Supp. 288, 289 (E.D.N.Y.1990). In this regard, sanctions are appropriate only where the legal argument is patently wrong and where there is no chance of extension or modification of current law. *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir.1992); *Brasport, S.A. v. Hoechst Celanese Corp.*, 134 F.R.D. 45, 47 (S.D.N.Y. 1991) ("[I]n order to find a Rule 11 violation, it should be 'patently clear' to the court that a claim had 'absolutely no chance of success.'" [citations omitted]), *aff'd*, 940 F.2d 649 (2d Cir.1991). Similarly, in *Securities Indus. Ass'n v. Clarke*, 898 F.2d 318, 321–22 (2d Cir.1990), the court held that attorneys need not "accurately prognosticate the correct law in order to avoid sanctions." (In *Clarke*, 898 F.2d at 322, the court concluded that "[o]n more than one occasion, 'we have remind[ed] judges to refrain from imposing sanctions where such action would stifle the enthusiasm or chill the creativity that is the very lifeblood of the law'").

Viewed under these standards, Friedman's argument as to an "identifiable fund" is not necessarily frivolous and therefore is not sanctionable.

**5. General Plastics Had No "Present or Immediate Right to Possession" of Any Fund**

There remains a more serious ground for sanctions: the bizarre pleading by General Plastics by its counsel claiming conversion and theft of a fund that the client had authorized to be paid to the IRS.

In section III of their motion for reconsideration, General Plastics and Friedman contend (as they contended at trial) that there was some evidence presented which established General Plastics' right to possession of the purchase price payments.

However, this Court's opinion allowing sanctions noted, among other things, "that responsible officers of General Plastics had acknowledged there was no 'present or immediate right to possession' of a fund." That analysis was largely predicated on testimony of its officers Finn and Bumgarner. Movants now argue that, in considering that testimony, its context should also be considered, and further that evidence was presented that more than "funds" were converted. They also assert that the acquiescence of General Plastics' officers in the retention of proceeds by Capital Factors and payment thereof to the IRS was their yielding to conversion and theft that had already occurred and was an attempt to mitigate the effect of Capital Factors' suspension of funding and refusal to resume that funding.

■ General Plastics and Friedman argue that the IRS levy only applied to property held at the time of the levy and that General Plastics assigned new receivables to Capital Factors after termination of the factoring agreement. These arguments were specifically considered by this Court in the earlier memorandum opinion allowing sanctions, and they miss the point of the Court's earlier reasoning. Whether Capital Factors had the legal right to withhold subsequent

payments solely because of the IRS levy became irrelevant when Finn and Bumgarner specifically authorized Capital Factors to withhold the funds and pay those funds to the IRS. There can be no conversion where a person consents to the possession by another of the assets allegedly converted. *Nat'l Bank of Melbourne v. Batchelor,* 266 So.2d 185, 187 (Fla. 4th Dist.Ct.App.), *rev. denied,* 269 So.2d 369 (Fla.1972). Likewise, such consent clearly precludes the intent to deprive another person of his property as required by the Florida civil theft statute. Fla. Stat. ch. 812.014 (1993). Moreover, General Plastics' agents did not merely acknowledge the validity of the IRS lien; as Bumgarner testified, they directed Capital Factors to pay it. The legal issues over the effect of a levy versus an IRS lien are, in light of this record, not dispositive.[1]

■ General Plastics did not claim that Capital Factors converted or stole the actual receivables assigned by it after contract termination. Counts V and VI allege only that Capital Factors converted the "purchase price" of its receivables. Amended Counterclaim, par. 25. The "new receivables" were, according to movants General Plastics and Friedman, assigned between March 18 and April 9. Motion for Reconsideration at 15. However, according to testimony of Finn and Bumgarner, on March 26, General Plastics requested Capital Factors to withhold funds otherwise due it to pay the IRS and Capital Bank. This request was repeated in correspondence and conversations before and after April 9. It was clear from this evidence that General Plastics intended Capital Factors to withhold all sums that might be due it from the purchase price of factored receivables, including the "new receivables."

Movants now attempt to characterize the authorization of Finn and Bumgarner as their unwilling acceptance of Capital Factors' refusal to make purchase price payments after its receipt of the IRS levy. Their testimony refuted this characterization. When the IRS levy was received on March 26, Finn discussed the matter with Herzog and reached an agreement that Capital Factors would retain collected monies after its loan was paid off in order to satisfy the IRS lien. The weight of evidence did not establish legal duress or anything resembling it.

Further, General Plastics and Friedman did not base Counts V and VI at trial on contentions that the agreement of Finn and Bumgarner for direct payment to the IRS was the result of some sort of duress practiced by Capital Factors, although they made that argument with regard to the Capital Bank payments. There is no reason why this argument, if serious, could not have been made at trial as to the monies paid to the IRS.

### 6. *Friedman Had Burden of Reasonable Inquiry to Determine Whether General Plastics Had Right to Possession of Fund*

■ Friedman asserts on his own behalf that there is no basis for finding that he failed to make a reasonable factual inquiry into that matter. This argument addresses whether Friedman knew or should have known of the facts pertaining to Finn and Bumgarner's authorization for Capital Factors to withhold the purchase price payments and to pay the same to the IRS.

■ An attorney's factual inquiry required by Fed.R.Bankr.P. 9011 is governed by an objective standard of reasonableness: *Our Lady of the Lake Hospital, Inc.,* 960 F.2d at 444:

In determining whether an attorney has made a reasonable factual inquiry, a court may consider factors such as the time available to the signer for investigation; the extent of the attorney's reliance upon his client for the factual support of the document; the feasibility of a prefiling investigation; ... the complexity of the factual and legal issues; and the extent to which development of the factual circumstances underlying the claim requires discovery.

---

1. Movants' legal position on this issue is wrong, since a notice of IRS levy gives notice of the IRS lien as well, thus giving the IRS a superior right to funds subsequently acquired. *Bank of America Nat'l Trust & Savings Ass'n v. Mamakos,* 509 F.2d 1217 (9th Cir.1975); *see also In re Wright,* 156 B.R. 549, 554 (Bankr.N.D.Ill.1992) (Coar, J.).

*Accord Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir.1987) (*en banc*); *Bradgate Assocs., Inc. v. Fellows, Read & Assocs., Inc.,* 999 F.2d 745, 752 (3d Cir.1993). *See also* Fed.R.Civ.P. 11, Notes of the Advisory Committee, 1983 Amendment. It is appropriate to determine not what the attorney actually knew, but what a reasonable and competent attorney would have discovered. *Baker v. Alderman,* 150 F.R.D. 202, 208–209 (M.D.Fla.1993) (*following Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253–54 (2d Cir.1985) (adopting the reasonable competent attorney standard)); *In re Trotman,* 148 B.R. 961, 963 (Bankr.M.D.Fla.1992) (same).

Friedman clearly had sufficient time to make an investigation. The counterclaim was not amended until July 1992—ten months after the initial counterclaim was filed and over one year after the litigation had commenced. Substantial discovery had been taken by then. Friedman had ample opportunity for detailed conferences with Finn and Bumgarner about the facts of the case in order to respond to that discovery. He had every opportunity to learn then what they would later testify to.

The issue was not complex. If Finn and Bumgarner authorized the withholding and payment of the monies in issue, as they later testified, any reasonable counsel could see the frivolity of the pleaded conversion and theft counterclaims. No discovery was needed (although there was ample time for discovery prior to counsel signing the amended counterclaim) since the information was possessed by the managing agents of General Plastics.

■ Friedman suggests that it is Capital Factors' burden to demonstrate the inadequacy of his prefiling factual investigation. On the contrary, where a pleading proves at trial to have been without substantive basis and a reasonably competent attorney should have known that or found it out, sanctions are appropriate when the record contains no evidence of a proper inquiry or legitimate excuse for failure to conduct a reasonable inquiry. *Mike Ousley Prods, Inc. v. WJBF-TV,* 952 F.2d 380, 383 (11th Cir.1992).

We now turn to Friedman's description of his inquiry before he signed and filed the amended Counterclaim pleading.

7. *From this Inquiry, Friedman Was Aware from His Client of Critical Facts That Defeated His Conversion and Theft Pleadings*

A. **Friedman's affidavit shows he knew that allegations of Counterclaim Counts V and VI were false and misleading.**

Based on Friedman's own affidavit, sanctions against him are warranted because (1) he knew from what his client's officers told him that the conversion and civil theft counts were false and misleading; (2) the counterclaim did not allege duress as the factual basis for the conversion and theft claims; and (3) duress or coercion was never a basis for these claims throughout this litigation, and Friedman cannot justify these claims in hindsight on a theory never presented to the Court.

1. **Friedman knew that the Counterclaim as pleaded was false and misleading.**

■ Friedman admits that the managing agents of General Plastics informed him, prior to his filing the amendment to the Counterclaim which added the conversion and theft claims, that they had "agreed that Capital Factors would use General Plastics' money to pay an obligation owed the I.R.S. . . . ." Affidavit of Friedman at 3, par. 7.

The Counterclaim, however, failed to allege this agreement, but rather alleged that Capital Factors had no right or authority to retain the funds. Count V, for conversion, alleged:

24. Upon Factors' cessation of making payments of the purchase price, Factors wrongfully converted to its own use monies belonging to General Plastics (namely, the purchase price of receivables sold and/or assigned and arising after March 15, 1991, hereafter referred to as the "Asset"). For example:

. . . . .

c. Factors maintained possession of (and continues to maintain possession of a portion of) the Asset after General Plas-

tics' account balance with (and all obligations to) Factors had been paid in full....

 . . . . .

26. *Factors had and has no right or entitlement to the use and/or possession of the Asset.*

27. Factors' use and/or possession of the Asset was and is wrongful and inconsistent with General Plastics' ownership of the Asset.

28. Factors' conversion of General Plastics' Asset to and/or for its own use and the use of others was done with the intent to deprive General Plastics of the ownership, use, and possession of the Asset.

Verified Amendment to Verified Counterclaim at 2–3 (emphasis supplied). These allegations were realleged in Count VI. *Id.* at 4, par. 32.

The basis of these claims, as alleged in paragraph 26, was that Capital Factors had no right to retain possession of the funds. However, Friedman knew that, because of the agreement made by his client, this claim was contrary to the facts: Capital Factors did have express authorization from General Plastics to retain these funds and pay them to another.

It cannot be inferred that Capital Factors had no right to possession of the funds from his present conclusion that General Plastics' consent was acquired by duress. As was said by one court in an analogous situation,

The best face one can put on the complaint is that the lawyers asserted inferences as if they were facts. Walters could acquire WGGO from Schlegel; therefore Walters "owned" WGGO. WGGO was engaged in negotiations that the lawyers were sure would have succeeded; therefore WGGO had "contract rights", as if the negotiations had been completed. This is impermissible. A lawyer must distinguish a fact from an inference he seeks to press on the court. It is unprofessional conduct to represent inferences as facts. [citations omitted] Misleading representations, whether deliberate or careless, misdirect

the attention of other lawyers and the district judge.

*Skycom Corp. v. Telstar Corp.,* 813 F.2d 810, 819 (7th Cir.1987) (remanding for consideration of Rule 11 sanctions); *see also Coburn Optical Indus., Inc. v. Cilco, Inc.,* 610 F.Supp. 656, 659 (D.C.N.C.1985) ("[A]n attorney must not omit facts critical to the application of the rule of law relied on by the Court.")

Furthermore, the factual elements of a claim of conversion are significantly different from those of a claim of duress. Duress requires a showing that the act was involuntary and was caused by some improper or coercive conduct by the other party. *See City of Miami v. Kory,* 394 So.2d 494, 497 (Fla. 3d Dist.Ct.App.1981), *rev. denied,* 407 So.2d 1104 (Fla.1981).

A claim that possession was acquired through duress cannot therefore be subsumed under the general allegation that a party had no right to possess the property. For example, in *National Bank of Melbourne & Trust Co. v. Batchelor,* 266 So.2d 185 (Fla. 4th Dist.Ct.App.1972), the plaintiff there brought an action for conversion to recover assets which a decedent had transferred to the defendant during his life. The evidence showed that the decedent had consented to the transfers, but that such consent may have been the result of undue influence. The court affirmed a directed verdict on the conversion action because the evidence showed that the decedent consented to defendant's possession of the assets. *Id.* at 187. The opinion there showed that the issue of whether such consent was voluntary cannot be subsumed under the obligations of simple conversion, but the court went on to hold that the issue of undue influence had properly been raised. Although not asserted by the complaint alleging conversion, that issue was tried by the express or implied consent of the parties. *Id.* That did not happen here.

Friedman's affidavit reveals that he had no factual support for the conversion and theft claims based upon the theory that Capital Factors had no right to possess the funds, although he might have had arguable support for a pleading that the funds were retained

under duress and were thereby converted or stolen. Since the conversion and theft claims were pleaded and litigated through trial on a factually groundless theory and without any contention of supposed duress to force his client's consent, sanctions under Rule 9011 against Friedman are appropriate. *See Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089 (11th Cir.1994) (reversing order denying sanctions for tortious interference claim where evidence showed party and counsel knew from the beginning that no harm to business relationship had occurred); *Suncoast Airlines, Inc. v. Atkinson & Mullen Travel, Inc. (In re Suncoast Airlines, Inc.)*, 1994 U.S.Dist. LEXIS 12749 (S.D.Fla. 1994) (Rule 9011 sanctions against debtor's counsel affirmed where testimony of debtor's principal witness abandoned most of the affirmative defenses alleged by counsel).

The extensive effort of Friedman to investigate as to the conversion and theft counts cannot wipe out the effect of what his clients told him that showed those counts had no merit.

**2. The duress theory now advanced was never presented to the Court.**

 Friedman litigated the conversion claim on the basis that Capital Factors had no right to retain the funds (as opposed to asserting a right to retain the funds which were acquired under duress). This was in obvious defiance of the known facts. At no time prior to his supplemental brief on sanctions did Friedman ever argue or present the current duress theory. Indeed, the agreement by his client was itself not revealed until the managing agents of General Plastics testified about it at trial.

Yet even after this revelation, Friedman continued to maintain to the end of the case and afterwards that Capital Factors simply had no right to retain the funds. In the Proposed Findings of Fact and Conclusions of Law which Friedman submitted on behalf of General Plastics after the trial on liability, no mention was made of the agreement and no argument was made that the agreement was involuntary. Concerning Capital Factors' retention of funds, the Proposed Findings state:

Nonetheless, Capital Factors still [after April 9, 1991] did not pay over any moneys or turn over any property of General Plastics which it was holding. That Capital Factors still refused to turn over the Property to General Plastics only bespeaks malicious purposes. (46–47)

In this case, Capital Factors received specifically identifiable sums of money in payment for and upon each and every Receivable, knew that it had no right to take those moneys, and refused to give back those moneys.

. . . . .

Where a creditor has possession of funds, the disbursement of which is governed by specific instructions, it constitutes conversion "to refuse return of the funds upon the [rightful owner's] demand." (116)

The evidence clearly demonstrated that Capital Factors had terminated the Agreement, and after numerous written and oral demands—including this litigation—for the same. (117)

That General Plastics had possessory rights cannot be disputed. (127)

The evidence demonstrated that Capital Factors both consumed General Plastics' Property . . . and also appropriated that Property by retaining it for its own use and/or simply to deprive General Plastics of the same . . . Moreover, these actions of Capital Factors were taken notwithstanding General Plastics' numerous demands that Capital Factors return General Plastics' Property to General Plastics. Such conduct was clearly wrongful. (128)

General Plastic Corporation's Proposed Memorandum Opinion Containing Findings of Fact and Conclusions of Law served May 10, 1993 (citations omitted).

Friedman's latest briefs (and affidavit putting a "duress" gloss on what his clients told him) thus attempt to rationalize the conversion and theft claims under a factual theory never presented to the Court at trial. Such hindsight rationalizations will not avoid Rule 9011 sanctions. *See Pierce v. Commercial Warehouse*, 142 F.R.D. 687, 690 (M.D.Fla. 1992) (argument must be presented to court

for what it is in order to avoid Rule 11 sanctions).

Because Friedman admits that he knew of General Plastics' consent all along, yet litigated the conversion and theft claims on the basis that there was no such consent, his conduct constitutes a clear violation of Rule 9011.

### 3. The affidavit reveals no reasonable inquiry into the factual basis of the civil theft claim.

Finally, Friedman's affidavit does not show any factual inquiry into the element of specific intent of Capital Factors to steal the funds, an element required to establish civil theft. The sanctions originally ordered by this Court were based in part on the absence of evidence of such intent. Theft, even civil theft, is substantively different from conversion because it requires a specific intent to steal, and what might be a sufficient factual basis for conversion may not be sufficient for civil theft. *See City of Cars, Inc. v. Simms*, 526 So.2d 119, 120 (Fla. 5th Dist.Ct. App.1988), *rev. denied*, 534 So.2d 401 (Fla. 1988).

The facts available to Friedman, according to his affidavit, did not constitute a sufficient basis for alleging civil theft. As Friedman knew, Capital Factors was retaining the funds with consent of his client to pay the IRS, not because it intended to steal the funds. The absence of a factual basis for the theft claim alleged in Count VI thus warrants sanctions.

#### CONCLUSION

Other arguments asserted were fully disposed of in the Findings and Conclusions following trial, and in the Memorandum Opinion entered along with the order allowing sanctions. Movant's reasserted positions need not be further responded to.

Conversion and theft are serious charges. They sting in their moral implication as well as in the expensive attorneys' work required to defend against them. They should never be lightly made, and in this case were baseless and should never have been advanced.

Accordingly, the Motion for Reconsideration is by separate order denied, and the Court will proceed by separate Memorandum Opinion to analyze issues as to the amount of sanctions to be allowed.