666 So.2d 937 (1995)
Gerald SAMBORN, et al., Petitioner,
v.
STATE of Florida, Respondent.
No. 95-1495.
District Court of Appeal of Florida, Fifth District.
December 22, 1995.
Stuart I. Hyman of NeJame & Hyman, P.A., Orlando, for Petitioner.
Robert A. Butterworth, Attorney General, Tallahassee, and Kristen L. Davenport, Assistant Attorney General, Daytona Beach, for Respondent.
THOMPSON, Judge.
Gerald Samborn, et al. ("Samborn"), petitions this court for certiorari review of the opinion and order of the circuit court, acting in its appellate capacity, reversing a county court order which dismissed driving under the influence charges based on the state's destruction of exculpatory evidence. We deny the petition for writ of certiorari because Samborn has not demonstrated that the circuit court's order departed from the essential requirements of law. See Haines City Community Dev. v. Heggs, 658 So.2d 523 (Fla. 1995).
In its order of dismissal, the county court found that technicians of the Orange County Sheriff's Office were improperly conducting *938 monthly maintenance tests on their Intoxilyzer 5000 breath-testing instruments. The practice of testing the instruments on a monthly basis was required by the State of Florida. See § 316.1932(1)(f)1, Fla. Stat. (1993); Fla. Admin. Code R. 10D-42.024 (repealed Oct. 31, 1993). An integral part of the testing involved the calibration of the Intoxilyzers using a simulator solution to ensure that the instruments were functioning within statutory tolerances. Often, multiple solutions were remixed and destroyed until a result was reached that appeared to be in tolerance with state requirements. The civilian breathtesting technicians saved test results and print cards showing the proper results, and they routinely destroyed results indicating that the Intoxilyzer may have been out of tolerance and, accordingly, operating in error. This practice occurred over a span of ten years. The county court found that the evidence thus destroyed was exculpatory and that the destruction of the evidence demonstrated bad faith on behalf of the state.
The county court dismissed the charges, finding that, when it "balanced the State's interest in prosecuting persons for these serious offenses and the individual's interest in a fair trial as required in Kelley v. State, 486 So.2d 578 (Fla. 1986)[, cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986)], State v. Sobel, 363 So.2d 324 (Fla. 1978), and Adams v. State, 367 So.2d 635 (Fla. 2d DCA 1979)[, cert. denied, 376 So.2d 68 (Fla. 1979), disapproved on other grounds, State v. Pennington, 534 So.2d 393 (Fla. 1988)]," suppression of the evidence was required. The county court reasoned that, when "the result of a breath alcohol test is an element of the offense with which a defendant is charged and arrival at the truth depends on the accuracy of the test result," constitutional standards of fairness require "that the State preserve any questioned simulator solution and faulty test records and make those items available to defendants." The county court concluded that, even if a reviewing court ultimately disagreed with its finding that destruction of the evidence was flagrant and deliberate, dismissal of the charges still would be required because the state failed to meet its burden of showing the absence of prejudice under Sobel. The state appealed this decision to the circuit court.
The circuit court upheld the findings of the county court but, using a different legal analysis, reversed the county court's decision. The circuit court explained that, in determining whether the loss or destruction of potentially exculpatory evidence constitutes a due process violation, a trial court must apply the tests established in California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), and Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Applying those tests, the circuit court found no due process violation and, accordingly, reversed the county court's order of dismissal. Samborn now appeals the decision of the circuit court.
This court's scope of review is very narrow, in that Samborn has invoked this court's certiorari jurisdiction to review an opinion and order of the circuit court acting in its appellate capacity. In this instance, the Florida Supreme Court has explained:
[T]he district courts of appeal should not be as concerned with the mere existence of legal error as much as with the seriousness of the error... . The district courts should exercise [their] discretion only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice... .
... A district court may refuse to grant a petition for common-law certiorari even though there may have been a departure from the essential requirements of law... . The district courts should use this discretion cautiously so as to avert the possibility of common-law certiorari being used as a vehicle to obtain a second appeal.
Combs v. State, 436 So.2d 93, 95-96 (Fla. 1983) (citation omitted). The Florida Supreme Court recently reaffirmed the principle of Combs in Haines City Community Dev. v. Heggs, 658 So.2d 523, 524-25, 531 (Fla. 1995). In this case, Samborn sought to use the writ of certiorari as a second appeal. Inasmuch as the circuit court did not reweigh the evidence but merely reevaluated the legal import of the evidence, which it is entitled to do in its appellate capacity, the circuit court's opinion and order does not constitute a departure *939 from the essential requirements of law amounting to a miscarriage of justice. Accordingly, we deny the petition for writ of certiorari.
HARRIS, J., concurs.
GRIFFIN, J., concurs in part; dissents in part, with opinion.
GRIFFIN, Judge, concurring in part; dissenting in part.
I agree that certiorari should be denied because the order under review does not represent a departure from the essential requirements of law. I do not agree that petitioners have sought to use the writ as a "second appeal." Even if a circuit court, acting in its appellate capacity "merely reevaluate[s] the legal import of the evidence," certiorari may issue where in so doing there is a material departure from the essential requirements of law. Haines City Community Dev. v. Heggs, 658 So.2d 523, 530 (Fla. 1995).
I am concerned that the districts courts of appeal may once again be falling into a trap that we make for ourselves over and over again. We seize on a phrase as a shorthand expression of the solution to a narrow issue we are faced with deciding, but before long the phrase becomes cant and grows far out of proportion to its true significance. Based on my reading of recent decisions, I'm afraid that "second appeal" is one of those. Fortunately, in some cases, district courts seem to ignore utterly the "second appeal" bogeyman where the court concludes the circuit court committed an error of law resulting in a miscarriage of justice. In Heggs, Justice Anstead explained what is meant by there not being a right to a "second appeal": "As a case travels up the judicial ladder, review should consistently become narrower, not broader." 658 So.2d at 530. That is all it means. The fact remains that the jurisdiction of the district courts of appeal to review decisions of the circuit courts sitting in their appellate capacity is very different from the more familiar jurisdictional relationship between the Florida Supreme Court and the district courts of appeal. Circuit court appellate jurisdiction has very different constitutional, statutory and case law roots. See, e.g., Blore v. Fierro, 636 So.2d 1329, 1331 (Fla. 1994) (holding appellate rule allowing appeals of non-final orders not applicable to appeals to circuit court). The effect on Florida jurisprudence of the evolution of our circuit courts as the appellate court for fifty percent[1] of all the cases filed in our state courts has barely begun to be felt. The most basic issues concerning the composition, organization, powers and decision-making of these appellate courts have yet to be addressed, much less decided. The role of the district courts of appeal when faced with this new tide of one judge, two judge, three judge (or more) circuit decisions, and the intracircuit or intradistrict conflicts they will create is largely untested. To refuse a case like this one on the ground that it is a "second appeal" is unnecessary and unwise. This petition for certiorari is no more a second appeal than any certiorari petition we will ever see in which the petitioner claims that the appellate court's erroneous decision materially departed from the essential requirements of law.
NOTES
[1] Excluding juvenile and probate cases, the percentage is closer to seventy percent.