690 So.2d 1361 (1997)
STATE of Florida, Petitioner,
v.
Wilbur WILSON, Respondent.
No. 96-03613.
District Court of Appeal of Florida, Second District.
April 2, 1997.
*1362 Robert A. Butterworth, Attorney General, Tallahassee, and Tonja R. Vickers, Assistant Attorney General, Tampa, for Petitioner.
Julianne M. Holt, Public Defender, and Shea T. Moxon, Assistant Public Defender, Tampa, for Respondent.
PARKER, Acting Chief Judge.
The State of Florida filed a petition for writ of certiorari with this court, challenging the circuit court's reversal of the county court's denial of the defense's motion to discharge for violation of speedy trial. The circuit court entered the order while it served in an appellate capacity. We have jurisdiction. See Art. V, § 4(b)(3), Fla. Const.; Fla. R.App. P. 9.030(b)(2)(B). We grant the petition, concluding that the circuit court departed from the essential requirements of the law.
Wilbur Wilson was arrested on March 20, 1995, for driving while under the influence of alcohol, chemicals, or controlled substances (DUI). Under Florida Rule of Criminal Procedure 3.191(a), without any permitted extensions of speedy trial, the ninety-day speedy trial period would have run Saturday, June 17, 1995. Because the last day fell on a Saturday, the last day for trial, without permitted extensions, would be Monday, June 19, 1995. Fla. R.Crim. P. 3.040.
However, on May 10, 1995, Wilson appeared before the trial court with his attorney asking for thirty days for a new disposition date. The trial court advised that it was forced to set the matter for trial unless Wilson agreed to extend speedy trial by sixty days. Wilson's attorney, with Wilson's agreement, agreed to a sixty-day extension of speedy trial. The trial court's action, authorized by Florida Rule of Criminal Procedure 3.191(i)(1), created a new speedy trial final date of August 16, 1995, because a request for a continuance tolls the running of the speedy trial period for the duration of the continuance. See State v. Kubesh, 378 So.2d 121, 122 (Fla. 2d DCA 1980). At the end of the continuance the speedy trial period resumed.
On July 12, 1995, when the case was called for trial, the state filed a superseding information charging reckless driving. The state advised the trial court that the case involved the same circumstances giving rise to the DUI arrest and that the state would be calling the same witnesses previously furnished to the defense. Wilson's attorney, believing speedy trial had run on July 10, 1995, took the position that the superseding information was, in effect, a nolle prosequi of the DUI charge after speedy trial had run. Wilson filed two pleadings on July 12, 1995 Defendant's Notice of Expiration of Speedy Trial and Motion to Discharge for Violation of Speedy Trial. The trial court denied the motion to discharge for violation of speedy trial. After a nonjury trial, the trial court found Wilson guilty and sentenced him.
On appeal, the circuit court, acting in its appellate capacity, reversed the trial court, finding:
1. The period allowed for speedy trial, as extended, expired on July 10, 1995.
2. The State filed a superseding information charging the Appellant with reckless driving on July 12, 1995, after speedy trial had expired.
3. Based on Reed v. State, 649 So.2d 227 (Fla.1995) and State v. Agee, 622 So.2d 47[3] (Fla.1993), the superseding information should have been dismissed, because it was filed after the expiration of speedy trial. Therefore, the trial court erred in denying the Appellant's motion for discharge.
We are guided in our review of this petition for certiorari by the supreme court's *1363 direction in Combs v. State, 436 So.2d 93 (Fla.1983):
In granting writs of common-law certiorari, the district courts of appeal should not be as concerned with the mere existence of legal error as much as with the seriousness of the error. Since it is impossible to list all possible legal errors serious enough to constitute a departure from the essential requirements of law, the district courts must be allowed a large degree of discretion so that they may judge each case individually. The district courts should exercise this discretion only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.
Combs, 436 So.2d at 95-96. See also Haines City Community Dev. v. Heggs, 647 So.2d 855 (Fla. 2d DCA 1994), approved, 658 So.2d 523 (Fla.1995). Clearly, the circuit court failed to recognize that Wilson's agreement to extend the speedy trial period tolled the running of the period for sixty days resulting in a new speedy trial date of August 16, 1995. See Kubesh. The circuit court's failure to recognize Wilson's agreement to extend the period of speedy trial is a violation of a basic principle of the speedy trial rule which cannot be upheld because the state would be deprived of its day in court. The state filed a superseding information well within the extended speedy trial time created by Wilson's own actions. Any extension or waiver of speedy trial charged to Wilson applies to an amended information charging a crime based upon the same conduct or criminal episode as the original information. State v. Corlew, 382 So.2d 787 (Fla. 2d DCA 1980). The county court trial judge was correct in denying the defense motion to discharge, and the circuit court erred in failing to recognize this extended speedy trial period.
The cases upon which the circuit court relied are distinguishable. In Reed, the prosecution entered a nolle prosequi of the original arrest charged, allowed the speedy trial time to run, and then attempted to refile additional charges based upon the same criminal conduct. In Agee, the prosecution entered a nolle prosequi of the original charge, allowed the speedy trial time to run, and almost two years later, filed a new charge based upon the same circumstances. Neither of these cases apply to the facts in this case because the speedy trial time had not run when the state filed a superseding information against Wilson for reckless driving. In fact, in Agee, the court stated: "[W]e hold that when the State enters a nol pros, the speedy trial period continues to run and the State may not refile charges based on the same conduct after the period has expired." Agee, 622 So.2d at 475 (emphasis added).
We grant the state's petition for writ of certiorari, quash the order of reversal that the circuit court entered, and direct the circuit court to affirm the county court's order denying Wilson's motion for discharge.
WHATLEY, J., concurs.
ALTENBERND, J., dissents with opinion.
ALTENBERND, Judge, Dissenting.
I agree that we have jurisdiction to review the circuit court's decision in this "second appeal" certiorari proceeding. Although the majority's discussion of speedy trial is correct, I cannot conclude the standard of review established in Combs v. State, 436 So.2d 93 (Fla.1983), and Haines City Community Development v. Heggs, 658 So.2d 523 (Fla. 1995), authorizes this court to grant relief.
Mr. Wilson was initially charged with DUI and ultimately convicted of reckless driving. In his brief in circuit court, Mr. Wilson primarily argued that the county court agreed to extend the speedy trial period in his case for a total of sixty days, beginning on May 10, 1995. He did not argue that the speedy trial rule must always be interpreted in this fashion in all cases. The transcript of the short hearing in county court does not clearly reveal that court's intent. The circuit judge apparently reviewed the transcript and decided that Mr. Wilson correctly interpreted the county court's extension. The circuit court opinion does not contain any ruling that would have future precedential value; it merely concludes that "the period allowed for speedy trial, as extended, expired on July 10, 1995."
I cannot conclude that the circuit court departed from the essential requirements of *1364 the law in making this decision. The state did not make the speedy trial argument to the circuit court that the majority adopts in its opinion. The state did not even cite State v. Kubesh, 378 So.2d 121 (Fla. 2d DCA 1980). Instead, it incorrectly argued that Mr. Wilson's earlier unsuccessful petition for writ of prohibition was res judicata on the issue. Moreover, even if the circuit court erred, I do not believe it committed a serious legal error that meets the "miscarriage of justice" standard.
I will not repeat the excellent historical analysis of certiorari in Heggs. See 658 So.2d at 525-26. Recent precedent generally states that the rule announced in Heggs restricts a district court's standard of review to two issues: (1) whether a violation of procedural due process occurred in the lower tribunal, and (2) whether the lower tribunal committed a serious error involving clearly established principles of law, rising to the level of a departure from the essential requirements of the law and resulting in a miscarriage of justice. See State v. Bock, 659 So.2d 1196 (Fla. 3d DCA 1995). Arguably, this is really one issue because any violation of procedural due process should be regarded as a serious error resulting in a miscarriage of justice.
I may be overlooking some nuance, but I conclude that Heggs gives this court discretion to remedy serious harmful errors involving established legal principles that either (1) occur in county court and should have been corrected on appeal to the circuit court, or (2) occur on appeal from county court to circuit court. Although "miscarriage of justice" is a test that rings with the eloquence of Jefferson or Lincoln, my own mundane analysis in a second-appeal certiorari proceeding asks: "Is the petitioner being seriously harmed because the circuit court failed to obey a clearly established rule of law?"
Despite the excellent discussion in Heggs, so long as the final test in certiorari involves a "miscarriage of justice" standard, I fear that district court outcomes will be subjective and unpredictable. For example, comparing the decision in Heggs to our decision in this case, one sees that it is not a miscarriage of justice to deny one landlord the right to evict tenants, but it is a miscarriage when the state cannot fine a specific defendant for reckless driving. In the Third District, the district court can declare a miscarriage of justice when it disagrees with the circuit court's decision on appeal to grant a criminal defendant a new trial when the county court denied a motion to strike a particular juror for cause. State v. Frey, 685 So.2d 967 (Fla. 3d DCA 1996). See also State v. Osvath, 661 So.2d 1252 (Fla. 3d DCA 1995) (granting certiorari because district court disagreed with circuit court's decision that use of illegal tape recording in one misdemeanor trial was fundamental error); ERA Carico Real Estate Co. v. Manfredonia, 689 So.2d 1208 (Fla. 3d DCA 1997). It is a miscarriage when both the county and circuit courts conclude that State v. Durkee, 584 So.2d 1080 (Fla. 5th DCA 1991), authorized dismissal of one DUI case as a sanction to improve police procedures where the police misled, or at least misinformed, the defendant about the cost of a blood test. Bock, 659 So.2d 1196. In the First District, both the county court and the circuit court committed a miscarriage of justice by deciding that a highway patrol trooper was engaged in a citizen's encounter or had reasonable suspicion for a brief investigation of a parked car at 1:08 a.m. when both courts overlooked the fact that the trooper parked behind the defendant's car. Harrelson v. State, 662 So.2d 400 (Fla. 1st DCA 1995). While the First District apparently reviews the factual specifics of every police encounter on certiorari, the Second District now promises to review the entire record of every county court trial to determine whether all the elements of the offense have been proven. Von Goff v. State, 687 So.2d 926 (Fla. 2d DCA 1997). I do not question that all of these results are fair, but I am increasingly concerned that the flexibility of the miscarriage of justice standard may devour the rule of finality.
Heggs emphasizes the ancient common law roots of certiorari. Although the writ is very old, its use by district courts as a method to review circuit court appeals is a modern adaptation. District courts of appeal did not exist until 1957, and Florida's four-tier court system was established by the revision of *1365 Article V of the Florida Constitution in 1973. We must honor the writ's heritage, but it may be necessary to refine the test we used to grant the old writ in this new context.[1]
I fear that the district courts' varying approaches to "second appeal" certiorari is merely a symptom of a larger problem: the absence of an appellate process for county court decisions that provides adequate review of individual cases and permits publication of binding precedent for future cases. In addition to misdemeanors and traffic offenses, county courts are now resolving virtually all landlord/ tenant claims and many insurance claims, including almost all personal injury protection claims. The monetary jurisdiction of county court has increased dramatically since 1973. See § 34.01(1)(c), Fla. Stat. (1993). County courts are now deciding more cases that have great impact on the parties and more cases that could or should have precedential value.
Currently, the appeals from county court judgments are not controlled by a uniform statewide system. See Samborn v. State, 666 So.2d 937, 939 (Fla. 5th DCA 1995) (Griffin, J., concurring in part and dissenting in part). Within the Second District, some circuits assign a single judge to review decisions from county courts, and other circuits assign three-judge panels. Whether one judge or three judges decide the appeal is a matter resolved by local rule. There is no significant discussion of the required process for circuit court appeals in our state constitution, statutes, rules of appellate procedure, or rules of judicial administration.
Moreover, there is no official reporter for circuit court appellate opinions. Although the supreme court has stated that these circuit court opinions are binding on all county courts within the circuit, Fieselman v. State, 566 So.2d 768 (Fla.1990), it has also recognized that circuit court appellate opinions are "not widely reported and used as precedent." Heggs, 658 So.2d at 526 n. 4. This system permits or even encourages multiple conflicting circuit court appellate opinions that are difficult to locate and whose conflicts are hard to resolve in the district courts.
I do not question the competence of circuit court judges to handle county court appeals skillfully. I also recognize that county courts may certify questions of great public importance to the district courts, which questions we may review within our discretion. Fla. R.App. P. 9.030(b)(4)(A). Nevertheless, I have a growing concern that the published opinions in "second appeal" certiorari are weakening the rule of finality in order to provide case-specific appellate remedies caused by structural weaknesses within the circuit court appellate system. Thus, if we are to preserve the very restricted, but flexible, writ of certiorari whose heritage is discussed in Heggs, we must provide an adequate procedure for appellate review of county court decisions that are important to the parties, even if they do not present questions of great public importance.
NOTES
[1] There is some similarity between the flexibility of the "miscarriage of justice" standard, and the now discarded "shocks the judicial conscience" standard. See Bould v. Touchette, 349 So.2d 1181 (Fla.1977).